**STATE of Utah, Plaintiff and Appellee,**

v.

**Galen L. JONAS, Defendant and Appellant.**

**No. 880411–CA.**

Court of Appeals of Utah.

May 22, 1990.

less disregard" standard of *Clayton v. Crossroads*  *Equipment Co.,* 655 P.2d 1125 (Utah 1982).

OPINION

JACKSON, Judge:

Defendant appeals a jury verdict finding him guilty of three counts of theft: (1) theft by receiving, a third-degree felony, in violation of Utah Code Ann. § 76–6–408 (Supp.1989) and § 76–6–412(1)(b) (1978), on July 17, 1985, and (2) on July 30, 1985, and (3) theft by receiving, a class A misdemeanor, in violation of Utah Code Ann. § 76–6–408 (Supp.1989) . and § 76–6–412(1)(c) (1978), on July 25, 1985. We affirm.

Defendant seeks reversal of the convictions or a new trial on five grounds: (1) insufficient evidence; (2) failure to excuse a prospective juror for cause; (3) a bailiff's allegedly improper contact with jurors; (4) failure of the court reporter to provide an accurate transcript of the evidentiary hearing on a motion for mistrial; and (5) denial of a motion to recuse the trial judge. We will review each of defendant's challenges in turn.

## SUFFICIENCY OF EVIDENCE

The standard of review of a jury verdict challenge based on insufficiency of the evidence is as follows:

> [W]e view the evidence presented and all inferences that can be drawn therefrom in the light most favorable to the verdict. Where there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the elements of the crime can be made beyond a reasonable doubt, our inquiry is complete and we will sustain the verdict.

*State v. Gardner,* 789 P.2d 273, 285 (1989) (citations omitted). Stated another way, we will reverse a jury conviction for insufficient evidence only when the evidence, viewed in the light most favorable to the jury's verdict, " 'is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the

Joan Watt, Salt Lake City, argued, for defendant and appellant.

R. Paul Van Dam and Christine F. Soltis, Salt Lake City, argued, for plaintiff and appellee.

Before DAVIDSON, JACKSON and LARSON [1], JJ.

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant

to Utah Code Ann. § 78–3–24(10) (Supp.1989).

crime of which he was convicted.'" *State v. Cobb*, 774 P.2d 1123, 1128 (Utah 1989) (quoting *State v. Marcum*, 750 P.2d 599, 601 (Utah 1988)).

In August 1986, defendant was charged with seven counts of theft by receiving arising out of separate transactions in 1985 and 1986. Four of the transactions occurred in July 1985. There were no transactions between July 30, 1985, and March 4, 1986. The three 1986 transactions took place in March, April, and May.

■ There was no essential difference in the State's evidence regarding each of the seven transactions. The police conducted a sting operation. On each occasion charged, an undercover police officer sold, and defendant purchased, various merchandise, consisting principally of equipment and appliances that the police had purchased beforehand or that was unclaimed evidence in police custody.[2] In each instance, the officer posed as a thief or fence selling stolen goods for about ten cents on the dollar. He usually wore an audio recorder and some transactions were videorecorded. These recordings were played and submitted to the jury. The police documented the goods sold and the monies defendant paid.

Defendant does not dispute the State's evidence. Instead, he claims that he knew the property he received in July 1985 was not stolen. Thus, he asserts that he did not have the culpable mental state that is a necessary element of the crime charged. Utah Code Ann. § 76-6-408(1) (Supp.1989) provides, with our emphasis:

> A person commits theft if he receives, retains, or disposes of the property of another *knowing that it has been stolen, or believing that it probably has been stolen*, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be stolen, with a purpose to deprive the owner thereof.

Defendant testified that he recognized as a police officer the undercover agent who sold him the merchandise in July 1985. Defendant also testified that he knew before all of the transactions that the property was not stolen. He claimed that this knowledge was based on information provided to him by two persons, James Lawrence Prater, a confidential police informant, and defendant's acquaintance, Officer Brown. Defendant and his wife testified that Prater told them in July 1985 about the sting operation but said "not to worry about it, that the merchandise was not stolen." Prater had arranged the first meeting between defendant and the undercover officer. Prater was not available at trial to corroborate or rebut the conversation testimony. On the other hand, Officer Brown did testify. Brown stated that in the fall of 1985, after the July transactions, defendant told him that he had been introduced by Prater to a man who had some damaged warehouse property that he would sell cheap to defendant. Defendant told Brown he thought Prater might be an undercover officer or an informant. Defendant's next contact with Brown was on March 29, 1986, when he directed Brown to an anticipated drug transaction which did not materialize. In May or June 1986, defendant spoke to Brown again. He showed Brown some property and asked Brown to check the national computer system, NCIC, to see if it was stolen. Brown remembered seeing an air compressor, saw blades, and a television. Defendant also gave Brown some serial numbers to check out. Brown reported to defendant that those items were not stolen. Brown believed that the checking on NCIC was done before defendant's arrest on August 1, 1986. But police records indicated only one NCIC check by Brown, on August 14, 1986.

■ Defendant was convicted on the 1985 charges and acquitted on the 1986 charges. The jury could have chosen to disbelieve defendant's story about the 1985 Prater conversation, his recognition of the property seller as a police officer, and his knowledge about the status of the property

---

**2.** The merchandise purchased in the seven transactions was, respectively, (1) Fischer VCR and Samsung TV, (2) Toshiba TV, (3) RCA and Magnavox video recorders, (4) three microwave ovens, (5) chain saw, (6) grill, air compressor, and kerosene lantern, and (7) Fischer VCR.

at the time he received it in July 1985, even if they accepted defendant's and Brown's testimony regarding defendant's knowledge or belief regarding the unstolen status of the property he received in 1986. The jury, not the appellate court, performs the function of determining the credibility of a witness's testimony. *State v. Lactod,* 761 P.2d 23, 28 (Utah Ct.App.1988). A person may be convicted of theft by receiving even if the property is not in fact stolen property, *State v. Pappas,* 705 P.2d 1169, 1173 (Utah 1985), if the State proves that the defendant acted under the belief that the property was stolen. *Id.* at 1172. Unless evidence that supports the jury's verdict is so insubstantial that the jury must necessarily have entertained a reasonable doubt that the defendant committed the crime charged, we are obligated to assume the jury believed the evidence which supports the verdict. *State v. Brooks,* 631 P.2d 878, 884 (Utah 1981). Nor will we overturn a conviction merely because the jury chose not to believe the defendant. *Lactod,* 761 P.2d at 27. There is substantial evidence from which the jury could reasonably conclude that defendant, at the time of the July 1985 transactions, believed that the property was stolen, despite his self-serving assertion at trial that he believed otherwise in July 1985. We therefore reject defendant's challenge to the jury's verdict.

### JURY SELECTION

After the completion of jury voir dire, defendant challenged one member of the venire for cause. Defense counsel, in an unreported conference at the bench, excepted to the trial court's denial of that request. The next day, defense counsel entered his exception upon the record in the following form:

MR. YENGICH: ... I failed—the Court allowed me to take exception to the Court's failure to—

THE COURT: Make a record.

MR. YENGICH: —exclude Juror Number—prospective Juror No. 6. She is the lady that indicated she had been burglarized in the past and initially said—

THE COURT: Ten or twenty years before, wasn't it?

MR. YENGICH: Well, I don't know. The record will speak to that. She indicated initially an indication that she did not think she could be fair and impartial and I at the ben[ch] excepted to her as indicating an implied bias of that particular juror and I used a peremptory challenge to strike her.

THE COURT: The record may so show.[3]

■ Defendant's exception was based on the following voir dire colloquy between the trial court and juror Smith:

THE COURT: All right. I almost hate to ask this question, but I'm obligated to. Have any of you been the victims of a theft? And that, as I've indicated to you before what a theft really is, taking property of another with intent to permanently deprive them, or in receiving. Well, we'll take that first. I saw some hands go up in the jury box.

All right. Mrs. Smith? I assume all you women are married unless you tell me otherwise.

PROSPECTIVE JUROR D. SMITH: Yes, my husband had about $13,000 worth of tools stolen about a year and a half ago which we have never—

THE COURT: Did a criminal act result from that—or action?

PROSPECTIVE JUROR D. SMITH: No, it was reported to the police, which they didn't do anything about, and we still have never gotten—

THE COURT: They didn't find it?

PROSPECTIVE JUROR D. SMITH: (shook head from side to side)

THE COURT: How long ago was that?

3. Although defense counsel spoke of "implied bias," the record indicates that the court and opposing counsel understood that the legal basis of the challenge to prospective juror Smith for cause was "actual bias." Subsections (e)(1) through (e)(13) of Utah R.Crim.P. 18 state grounds of implied bias or bias at law, i.e., bias arising from status. Subsection (e)(14) sets forth actual bias, i.e., bias arising from state of mind, as a ground for a challenge for cause.

PROSPECTIVE JUROR D. SMITH: About a year and a half ago.

THE COURT: Keeping that incident in mind, as I indicated, there are different parties involved, but sometimes based on our experience we allow that to interfere with our thinking.

PROSPECTIVE JUROR D. SMITH: It might be. If it was tools, I might be a little influenced.

THE COURT: Well, wait just a minute. Let me ask the questions and you just answer the question.

PROSPECTIVE JUROR D. SMITH: All right.

THE COURT: Bearing that in mind, do you believe that that incident would make it difficult for you to be fair and impartial, particularly to this Defendant, as well as the people of the state of Utah?

PROSPECTIVE JUROR D. SMITH: It's a little hard to say.

THE COURT: Well, you just take time to think it over because we—you're the one that—

PROSPECTIVE JUROR D. SMITH: It probably would, yes.

THE COURT: Let's see. You're Mrs.—

PROSPECTIVE JUROR D. SMITH: Smith, Donna Smith.

THE COURT: You don't believe that you could set those facts aside and make a determination on the evidence that's presented in this case?

PROSPECTIVE JUROR D. SMITH: I—well, yes, I believe I could be impartial.

THE COURT: We know you didn't like to lose the tools.

PROSPECTIVE JUROR D. SMITH: No, I didn't.

Defendant's objection to prospective juror Smith is based on Utah Rule of Criminal Procedure 18(e)(14) (codified at Utah Code Ann. § 77–35–18(e)(14) (1982), repealed effective July 1, 1990), which provides:

The challenge for cause is an objection to a particular juror and may be taken on one or more of the following grounds:
    . . . .

(14) that a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging. . . .

On appeal, defendant contends the trial judge committed reversible error by rejecting his challenge of Smith for cause. In his brief, he summarizes this claim of error as follows:

The trial judge abused his discretion in failing to excuse Juror Smith for cause after she indicated that she had been a victim of a crime similar to the crime charged and that she believed such experience would interfere with her ability to be impartial.

A motion to dismiss a prospective juror for cause is addressed to the sound discretion of the trial court. *State v. Gotschall*, 782 P.2d 459, 462 (Utah 1989). When reviewing such a ruling, we reverse only if the trial court has abused that discretion by committing harmful error. *Id.* The general rule concerning abuse of discretion is that the appellate court "will presume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary." *Goddard v. Hickman*, 685 P.2d 530, 534–35 (Utah 1984); *see State v. Williams*, 712 P.2d 220, 222 (Utah 1985). An appellant has the burden of establishing that reversible error resulted from an abuse of discretion. *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988).

A court commits prejudicial error if it forces a party to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause. *Gotschall*, 782 P.2d at 461; *State v. Cobb*, 774 P.2d 1123, 1125 (Utah 1989); *Bishop*, 753 P.2d at 451. When comments are made by a juror which facially bring into question that prospective juror's partiality or prejudice, an abuse of discretion may occur unless the court or counsel investigates further and finds the inference rebutted or dismisses the juror. *See Cobb*, 774 P.2d at 1127.

The *Cobb* holding suggests a two-part procedure. When the threshold of appar-

ent partiality or prejudice is crossed and an inference arises, the court must determine from further inquiry of the venire member whether the inference is rebutted. Thus, our first question is: Did Smith's initial comments raise an inference of partiality and prejudice on her part as to this cause or this defendant? We think not. She stated that the prior theft of her husband's tools might influence her thinking *a little, if this case involved tools.* This case did not involve tools, so it could be inferred that the prior experience would not influence her at all. As the trial court pressed her further, she expressed some concern while weighing her feelings about her ability to be fair but, upon final weighing, she expressed affirmative belief in her impartiality. Juror Smith's mild initial responses are in stark contrast to those of the two prospective jurors in *State v. Brooks,* 631 P.2d 878 (Utah 1981), who crossed the *Cobb* threshold. They stated that their strong adverse emotional responses as former crime victims would affect their thinking; Smith did not. They identified a residue of personal trauma which would compromise their capacity for objectivity; Smith did not. Their expressed states of mind supported an inference that they could not act with impartiality, defined as "a mental attitude of appropriate indifference" in *State v. Brooks,* 563 P.2d 799, 801 (Utah 1977), while Smith's expressed state of mind did not support a similar inference.

Finally, even assuming, *arguendo,* that Smith's initial comments raised on their face a threshold inference of partiality and prejudice, her subsequent responses to the judge's questioning show her concern was merely the product of a "light impression" and not one that would "close the mind against the testimony that might be offered in opposition." *Bishop,* 753 P.2d at 451 (quoting *State v. Bailey,* 605 P.2d 765, 768 (Utah 1980)).

For these reasons, we conclude that the trial court did not abuse its discretion in refusing to grant defendant's request for removal of Smith from the jury panel for cause.

## BAILIFF CONTACT

The parties rested their presentations on Friday, April 22, 1988, after four days of trial. The trial court then scheduled jury instruction and closing arguments for Monday morning, April 25. That weekend, a sister of juror Davis was shot to death during a robbery of a local video store. Juror Davis informed the court on Monday morning that he could not continue as a juror due to the fact that his pregnant sister had been murdered. Upon stipulation of counsel, the court excused Davis from further jury duty and an alternate juror moved into Davis's place on the jury. Davis, upon his departure from the courthouse, asked the bailiff to explain his absence to the other jurors, and the bailiff then did so.

Defense counsel, upon learning of the bailiff's contact with the jury, moved for a mistrial because the bailiff "did inform them of that." The court denied the motion without prejudice. Later, the bailiff was placed under oath and testified as follows about his contact with the jury:

(Whereupon, Judge Banks placed Bailiff HUGH BELL under oath, who testified as follows:)

THE COURT: State your name.

THE WITNESS: Hugh Bell.

THE COURT: And you are Deputy Sheriff?

THE WITNESS: Yes.

THE COURT: Bailiff of this court?

THE WITNESS: Yes.

THE COURT: This morning at nine o'clock Mr. Davis came in and stated reasons to the Court why he would like to be excused from the case, and would you tell us the sequence of events that happened after he left the chambers?

THE WITNESS: He came into the courtroom and asked for statement of service on his jury duty and I went to Joan, found where the statement was, got her to fill one out for him, gave it to him. I walked to the door and expressed my sympathy to him and everything, and he asked me if I would tell the rest of the jurors what happened, why he was excused.

THE COURT: And what did you do?

THE WITNESS: I went in and I told them that Mr. Davis wouldn't be in because his sister was the lady that was shot out in West Valley.

THE COURT: Were they discussing the case or the incident at all when you went in?

THE WITNESS: No.

THE COURT: Did you ever hear them discuss it?

THE WITNESS: They didn't know a thing about it.

THE COURT: All right, you may cross-examine.

MR. YENGICH: No cross-examination.

Defense counsel immediately renewed his mistrial motion "on the basis of the record."[4] Again, his motion was denied.

On appeal, defendant argues that, "by informing the remaining jurors that the trial court had excused another juror and the reason for that excuse, the bailiff interfered with Mr. Jonas' right to a trial by an impartial jury," guaranteed by the sixth amendment to the United States Constitution.[5] He relies on the declaration in *State v. Pike*, 712 P.2d 277, 279–80 (Utah 1985), that "[a]nything more than the most incidental contact during the trial between witnesses and jurors casts doubt upon the impartiality of the jury and at best gives the appearance of the absence of impartiality." In *Pike*, an important prosecution witness (an arresting officer and eyewitness) engaged three jurors in conversation about a personal incident. The Utah Supreme Court concluded that a rebuttable presumption of prejudice from the juror-witness contact was established because "the conversation amounted to more than a brief,

incidental contact and no doubt had the effect of breeding a sense of familiarity that could clearly affect the juror's judgment as to [the witness's] credibility." *Pike*, 712 P.2d at 281. Once such a presumption is raised, the court reaffirmed, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror.[6] *Id.* at 280; *see State v. Erickson*, 749 P.2d 620 (Utah 1987); *State v. Larocco*, 742 P.2d 89 (Utah Ct.App.1987), *cert. granted*, 765 P.2d 1277 (1988).

*Pike* identifies two reasons for the rule that a rebuttable presumption of prejudice arises from a nonincidental witness contact with a juror: (1) the inherent difficulty in proving how or whether a juror has in fact been influenced by conversing with a participant in the trial, and (2) the deleterious effect upon the judicial process because of the appearance of impropriety from such contact. *Pike*, 712 P.2d at 280.

In the instant case, the trial court did not indicate whether the denial of defendant's motion was based on a determination that the contact was incidental or that the contact was nonincidental, but the resulting presumption of prejudice was rebutted. On appeal, defendant assumes that the contact between the bailiff and the jurors was presumptively prejudicial because it was more than "a brief, incidental contact where only remarks of civility were exchanged." *Erickson*, 749 P.2d at 620.

In light of the enunciated reasons for the rule reaffirmed in *Pike*, we conclude that the contact between the bailiff and the jurors before the jury began deliberating was an incidental contact raising no presumption of prejudice. *Erickson* and *Pike*

---

**4.** See note 7, *infra*.

**5.** Although defendant mentions Article I, sections 10 and 12 of the Utah Constitution in his appellate brief, this issue was neither raised below nor adequately briefed or argued on appeal. We therefore confine our analysis to the federal constitution. *See State v. Marshall*, 791 P.2d 880, 883–84 n. 4 (Ct.App.1990).

**6.** This rule has its Utah roots in *State v. Thorne*, 39 Utah 208, 117 P. 58 (1911), in which two officers took the jury to lunch at a public hotel

in the midst of their deliberations. One juror and one officer left the group and the juror talked to someone on the telephone. The record did not show whom the juror talked with or what was said. The court concluded:

> From the conduct disclosed and the exposure of the juror to harmful influences, prejudice is presumed, and the burden cast on the state to show what the communication was, and that it was harmless and could not have influenced or affected the deliberations of the juror or his verdict.

*Id.*, 117 P. at 66.

and all the other Utah cases cited by defendant involved conversational contacts between a juror and a trial witness. In such circumstances, it is appropriate to characterize *any* verbal contact beyond mere civilities as nonincidental because it might influence the juror's ability to assess impartially the credibility of that witness. Jurors should not, as a matter of course, talk to witnesses about the case at hand or about anything else. According to *Pike,* the substance of any such conversation does not dictate application of the presumptive prejudice rule. The rule is applied, first, because of the potential for the conversation's subtle effect on the juror's ability to assess the credibility of the trial participant with whom he has conversed. Here, however, unlike the juror-witness cases relied upon by defendant, no "conversation" took place, in the normal sense of an "oral exchange of sentiments, observations, opinions, [or] ideas." Webster's Third Int'l Dictionary 458 (1986). There was no exchange at all because the jurors said nothing. The bailiff merely conveyed information about why juror Davis would not be present for the balance of the trial. In addition, the bailiff's credibility in the eyes of the jury was not at issue. He did not testify. The truth of his statement to the jury was not relevant.

We think the facts in this case are more like those in *State v. Garcia,* 11 Utah 2d 67, 355 P.2d 57 (1960), *cert. denied,* 366 U.S. 970, 81 S.Ct. 1934, 6 L.Ed.2d 1259 (1961). In *Garcia,* the contact occurred at the same stage of the proceedings, i.e., after all the evidence was in, but before the jury was instructed or the case argued or submitted. A juror approached the trial judge and privately asked if the parties would introduce tapes of certain testimony. The judge responded that he did not know, but would advise counsel that the juror had inquired. Our supreme court pointed out that, "while in a sense the juror's conversation with the trial judge was on a subject connected with the trial," the judge's response was not. *Garcia,* 355 P.2d at 59. Although it would have been improper for the judge to discuss the issue with the juror, the court stated, the judge's actual

response was proper. *Id.* The court saw "nothing about this situation which would tend to prejudice the defendant," distinguishing cases in which prejudice was presumed from a contact between a juror and a witness or interested party during the deliberative process. *Id.*

Here, the bailiff's message to the jury had an even more tenuous connection to the subject of the trial itself than the verbal interchange in *Garcia.* Although it was not unintended, it was not the kind of communication which would prejudice the jury's judgment regarding their verdict in this case.

The second reason identified in *Pike* for presuming prejudice is also absent here. Juror-prosecution witness contacts make the entire judicial process look collusive or unfair to the defendant. However, unlike verbal contacts between jurors and trial participants, verbal contacts beyond mere civilities between jurors and a bailiff, about subjects other than those connected with the trial at hand, are expected and unavoidable since the bailiff is assigned to minister to the jurors' needs and to be the contact person. We do not believe that *Pike* compels the conclusion that prejudice presumptively results when a bailiff says anything other than "Hello" or "Good morning" to a juror at a time when the case has not even been submitted to the jury for deliberations. *Compare* Utah Code Ann. § 77–17–9 (1990) (officer in charge of sequestered jury must not speak with jury "on any subject connected with the trial") *with* Utah Code Ann. § 77–17–11 (1990) (officer in charge of jury in deliberations shall "not permit any person to speak to or communicate with them or to do so himself except upon the order of the court....."); *see Still v. State,* 484 P.2d 549 (Okla.Crim. App.1971) (unauthorized communication between bailiff and jury during its deliberations would raise presumption of prejudice).

This bailiff did not mingle with the jurors or converse with them about the trial itself; nor did he interrupt their deliberations. His brief contact concerning something tangential to the trial itself did not give

rise to any appearance of impropriety. Thus, the trial court could have properly concluded that the contact was incidental and raised no presumption of prejudice.

Because we conclude that the juror-bailiff contact did not deny defendant his constitutional right to an impartial jury, the trial court did not abuse its discretion in denying the request for a mistrial. *See* *State v. Speer,* 750 P.2d 186 (Utah 1988).

## MOTION HEARING TRANSCRIPT

■ Defendant claims that his right of appeal has been impermissibly impaired because the transcript of the evidentiary hearing on his mistrial motion is incomplete. Defense counsel agrees that the bailiff's contact with the jury, discussed above, was a basis for the initial mistrial motion,[7] which was denied without prejudice. A hearing was later held concerning the bailiff-jury contact, at which the only witness called to testify was the bailiff. His testimony, fully quoted above, was short and direct and comported with defense counsel's report of the jury contact when stated as the ground for the initial motion. The bailiff's testimony concerning the content of his message to the jury did not give rise to a presumption of prejudice. Thus, the inquiry ended, and when defense counsel renewed the mistrial motion at the close of the testimony, it was again denied. The transcript of the court's inquiry, the bailiff's testimony, counsel's motion, and the court's ruling is complete. That portion of the transcript has no gaps and no indications of unintelligible words. The indication "(illegible)" appears solely in connection with statements of the court and counsel, which do not form the basis for defendant's claim that the jury was not impartial. Defense counsel's mistrial motion was renewed on the "basis of the record," i.e., the bailiff's testimony.

■ The court reporters' transcripts are virtually complete and thus amply adequate for us to review defendant's claims. This transcript is not like the transcript in *State v. Taylor,* 664 P.2d 439 (Utah 1983), where a new trial was ordered. There, a juror's responses to voir dire questions were totally absent from the record and could not be reconstructed. Here, the bailiff's testimony was totally reported, and there was no need to reconstruct the record.[8] We find the transcript before us to be functionally adequate for review. Not all deficiencies or inaccuracies in the record require a new trial. *State v. Perry,* 136 Wis.2d 92, 401 N.W.2d 748, 752 (1987). We conclude that the condition of the transcripts did not deprive defendant of due process or of the right of appeal guaranteed by Article I, section 12 of the Utah Constitution and Utah Code Ann. § 77–1–6(1)(g) (1990).[9]

---

7. Defendant's trial counsel filed an affidavit stating that he "thinks" he might have had a second ground for the renewed mistrial motion. If so, that ground would appear in the transcript of the proceedings. Appellate counsel has not identified a second ground for our consideration. Trial counsel's affidavit speculates that the purported second ground might have related to the prosecutor's closing argument. But the transcript of closing arguments is complete, without gaps, and without indication of an unintelligible word. Thus, any problem with argument could be identified by appellate counsel. Again, none has been directed to our attention. Moreover, the transcript reveals that defense counsel did not interpose any objection during the course of the prosecutor's argument. Counsel has the unfettered opportunity to interrupt at any time and request that any portion of an argument be recorded, and to voice any objection thereto he may desire. *State v. Gray,* 601 P.2d 918, 921 (Utah 1979). We conclude that the only actual ground for the renewed mistrial motion was the bailiff's conduct.

8. Here, the trial court attempted to "settle the record" due to defendant's claims about omissions. However, those omissions were not related to the material issues of this appeal as discussed in our analysis.

9. Defendant received, at State expense, a full and complete transcript of his trial consisting of several volumes. He takes no issue with the adequacy of the transcripts except a portion of one volume that contains instructions to the jury, closing arguments, and the hearing on the mistrial motion. The court reporter for these proceedings on the final day of trial departed the state and could not be located to prepare that part of the transcript. The reporter at all other trial proceedings prepared the entire transcript, utilizing the written notes of the missing reporter.

## TRIAL JUDGE RECUSAL

█ Defendant filed an affidavit of prejudice against Judge Banks, pursuant to Rule 29 of the Utah Rules of Criminal Procedure. He alleged that, twenty years earlier, the judge, as prosecutor, had been forced to dismiss certain criminal charges against him. Defendant claimed the judge still harbored resentment towards him arising from the dismissal. Defendant asserted actual bias of the judge against him, arising from that incident and from several other criminal prosecutions of defendant while Judge Banks was prosecuting attorney.

The trial judge examined the matter consistent with the rule, Utah R.Crim.P. 29, and statutory procedure, Utah Code Ann. § 77–35–29(c) (Supp.1989) (repealed effective July 1, 1990). The court compared defendant's factual allegations with the court files in each prior case. The court records demonstrated defendant's affidavit to be factually inaccurate concerning the judge's direct involvement in the several prosecutions, with one exception. The judge found that he had been personally involved in only one of defendant's prior prosecutions. Regarding that case, Judge Banks stated:

> [A] minute entry [is] endorsed on the Information showing that it was my motion to dismiss, and the others, the only basis for any prejudice would be that I was the District Attorney and that people who appeared in behalf of the State at the District Attorney's level were my deputies.

The judge concluded that the defendant's affidavit was factually insufficient and that prejudice was not shown. The matter was referred to another trial judge for review pursuant to Utah R.Crim.P. 29(d). That judge denied defendant's motion to disqualify Judge Banks and referred the case back to him for trial.

Defendant has failed to show any actual bias requiring recusal. We consider *State v. Neeley*, 748 P.2d 1091 (Utah), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988), to be controlling. In *Neeley*, Judge Banks, as prosecutor, had signed some criminal informations against defendants and had appeared in court in one case to accept a guilty plea. Based on those facts, the court found no actual bias, as required, and no grounds for reversal. The Utah Supreme Court stated:

> Judge Banks determined that he had no actual bias against defendant Belt by reason of his involvement in Belt's prosecution some twenty years prior. He then followed the statutorily mandated procedure to determine whether sufficient legal grounds existed to require his disqualification. While it has been suggested that a trial judge disqualify himself whenever an affidavit of bias and prejudice is filed against him in good faith, this practice is not mandatory.

*Neeley*, 748 P.2d at 1094. Continuing, the Court stated:

> But, while we recommend the practice that a judge recuse himself where there is a colorable claim of bias or prejudice, absent a showing of actual bias or an abuse of discretion, failure to do so does not constitute reversible error as long as the requirements of section 77–35–29 [Utah R.Crim.P. 29] are met.

*Id.*

In light of defendant's failure to establish actual bias or an abuse of discretion, Judge Banks did not commit reversible error by refusing to disqualify himself as trial judge.

We affirm defendant's convictions.

DAVIDSON and JACKSON, JJ., concur.