**LAYTON CITY, Plaintiff and Appellee,**

v.

**Frank R. ARAGON, Defendant and Appellant.**

**No. 900247–CA.**

Court of Appeals of Utah.

June 13, 1991.

Larry N. Long (argued), and Craig Cook (argued), Salt Lake City, for defendant and appellant.

Steven Garside (argued), Asst. City Atty., Layton, for plaintiff and appellee.

Before BENCH, GARFF and RUSSON, JJ.

BENCH, Presiding Judge:

Defendant Frank R. Aragon appeals his conviction of driving under the influence of an intoxicant in violation of Utah Code Ann. § 41–6–44 (1990) and challenges the admission into evidence of a statement he made while in custody. We remand for additional findings.

In the early morning hours of April 2, 1989, Layton police were dispatched to the home of Aragon's estranged wife in response to a report of domestic violence. Aragon, who was at the home, was reportedly about to leave in a black Monte Carlo.

On arriving, police found Aragon standing in the driveway next to a black Monte Carlo with its engine running. Nearby stood Aragon's wife and a few neighbors. Mrs. Aragon had been crying and had red marks about her face and neck.

Upon approaching Aragon, the police noted a strong odor of alcohol. Aragon belligerently refused to identify himself in response to a police request and stepped toward the inquiring officer, who extended his left arm to maintain a normal distance between himself and Aragon. Aragon thereupon shouted obscenities and assumed a fighting stance. The police informed Aragon that he was under arrest for disorderly conduct. After some resistance, Aragon was handcuffed and placed in the rear seat of the patrol car. After being restrained, Aragon's attitude changed from belligerence to cooperation. Aragon was apparently quite drunk: his breath smelled strongly of alcohol; he had red, watery, glassy eyes; and he swayed while standing and had difficulty maintaining his balance.

With Aragon in the patrol car, the police spoke with the others present at the scene. Aragon's wife declined to discuss the reported violence but mentioned that Aragon had driven to her home. Nicky Trujillo, a neighbor, also remarked that Aragon had driven there, but another neighbor, June Trujillo, said that a friend had driven Aragon. On further inquiry, June Trujillo said that Aragon had been at the house earlier with someone she thought was a friend in a vehicle she did not recognize. An officer thereupon approached Aragon and asked, "Where is the other person that was in the car with you, since I need to talk to him." Aragon answered, "There isn't anyone else with me," and continued: "I was alone when I drove here. I just got here three or four minutes ago." When Aragon made these statements, he had not been advised of his rights as prescribed in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After being charged with driving under the influence, Aragon moved to dismiss, arguing that the evidence did not suffice to convict him. In a signed docket entry, without findings or other elaboration, Judge Pamela Heffernan denied Aragon's motion. Aragon later moved to suppress as evidence his comments to the officer. In a memorandum decision, Judge K. Roger Bean considered the *Miranda* issue to have been resolved in the earlier motion denied by Judge Heffernan. Judge Bean thereupon proceeded to the question of probable cause for Aragon's arrest and ultimately denied Aragon's motion to suppress. Aragon was tried and police testified of his post-arrest statements. The jury returned a verdict of guilty. On appeal, Aragon argues that his comments should have been suppressed for lack of the *Miranda* warning and that the evidence did not sufficiently establish the elements of the crime of driving under the influence.

*Miranda* requires that a person in custody be informed of certain constitutional rights before being interrogated. 384 U.S. at 479, 86 S.Ct. at 1630. In this case, both parties recognize that Aragon was in custody and that he had not received the *Miranda* warning when he made the comments in question. What is less clear is whether he was subjected to interrogation.

The United States Supreme Court illuminated the meaning of "interrogation" for *Miranda* purposes in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Innis was arrested, unarmed, for a robbery in which a sawed-off shotgun had been used. Innis stated that he wanted to talk to a lawyer. On the way to the police station, the officers in the car with Innis noted that there were "a lot of handicapped children running around in this area" and "God forbid one of them might find a weapon with shells and they might hurt themselves." Innis thereupon took police to the hidden shotgun. *Id.* at 294–96, 100 S.Ct. at 1686–87. The Supreme Court resolved the question whether Innis had been interrogated for *Miranda* purposes by applying the following test:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.

That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Innis*, 446 U.S. at 300–02, 100 S.Ct. at 1689–90 (footnotes omitted); *see also Arizona v. Mauro*, 481 U.S. 520, 525–27, 107 S.Ct. 1931, 1934–35, 95 L.Ed.2d 458 (1987). In concluding that *Miranda* had not been violated in *Innis*, the Supreme Court noted that the officers' remarks were not addressed to Innis, were the sort of comments that police would ordinarily make to each other under the circumstances, were not a "lengthy harangue" but rather merely "a few offhand remarks," and that Innis did not appear to be upset, disoriented, or "peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children." *Innis*, 446 U.S. at 302, 100 S.Ct. at 1690; *see also Mauro*, 481 U.S. at 528–30, 107 S.Ct. at 1936–37 (noting facts bearing on interrogation issue).

Cases since *Innis* have clarified that an express question from police to a suspect does not amount to interrogation if, under the circumstances, the question was not reasonably likely to elicit an incriminating response. *Murphy v. Holland*, 845 F.2d 83, 85–86 (4th Cir.1988); *United States v. Gonzalez–Mares*, 752 F.2d 1485, 1489 (9th Cir.1985). The likelihood of incrimination must be determined from all of the circumstances; the same question may constitute interrogation in one situation but not in another. For example, in *United States v. Poole*, 794 F.2d 462, 466–67, amended in 806 F.2d 853 (9th Cir.1986) the court noted that asking for name, date of birth, and similar routine biographical data is ordinarily not an interrogation, but it was interrogation when asked immediately after showing a bank robbery suspect surveillance photos of the robbery and mentioning his accomplice by name. Moreover, in determining whether a question is or is not interrogation, the relationship between the question's subject matter and the suspected criminal act is highly significant. *United States v. Mata–Abundiz*, 717 F.2d 1277, 1280 (9th Cir.1983).[1] Although the subjective intent of police in asking the question is relevant, *United States v. Disla*, 805 F.2d 1340, 1347, the main focus is on whether *the suspect* is likely to incriminate himself or herself in response. *See Mauro*, 481 U.S. at 527, 107 S.Ct. at 1935 (The *Innis* concept of functional equivalent to interrogation "focuses primarily upon the perceptions of the suspect, rather than the intent of the police.").

Ascertaining the likelihood of incrimination under the circumstances of a specific situation is a factual determination. *See United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1046 (9th Cir.1990) (reviewed under clearly-erroneous standard); *Poole*, 806 F.2d at 853. In this case, the basic facts are essentially undisputed except for the critical, ultimate factual question of whether the officer's inquiry to Aragon, "Where is the other person that was in the

---

1. For example, asking a suspect's address ordinarily does not evoke an incriminating answer. *United States v. Edwards*, 885 F.2d 377, 385–86 (7th Cir.1989); *Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir.1989). However, if police

suspect that controlled substances can be found at the address, the questioning could well be incriminating. *United States v. Disla*, 805 F.2d 1340, 1347 (9th Cir.1986).

car with you, since I need to talk to him" was, under the circumstances, so likely to evoke an incriminating response that it constituted interrogation for purposes of *Miranda*. *Cf. State v. Ramirez*, 159 Utah Adv.Rep. 7, 16 n. 6, —— P.2d ——, —— n. 6 (Utah 1991).

The record does not indicate how the trial court resolved this factual question. Judge Bean's memorandum decision considered it to be law of the case from the earlier ruling by Judge Heffernan, but Judge Heffernan made no findings. Findings are required in pretrial motions to suppress critical evidence in criminal cases. *State v. Lovegren*, 798 P.2d 767 (Utah 1990); *State v. Sierra*, 754 P.2d 972, 981 (Utah App.1988), (criticized on other grounds in *State v. Arroyo*, 796 P.2d 684, 689 (Utah 1990)).

Since we are left on appeal without findings by the trial court on the decisive factual issue in this case, we remand it for entry of additional findings concerning whether Aragon was interrogated for purposes of *Miranda*.

GARFF and RUSSON, JJ., concur.