**STATE of Utah, Plaintiff and Appellee,**

v.

**Claude L. HAYES, Defendant and Appellant.**

**No. 920850–CA.**

Court of Appeals of Utah.

Sept. 17, 1993.

John T. Caine (Argued), Richards, Caine & Allen, Ogden, for defendant and appellant.

Jan Graham, State Atty. Gen., Kris Leonard (Argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF[1] and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Claude L. Hayes appeals from a conviction of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1990). Hayes argues that there was insufficient evidence to convict him of aggravated robbery, and that the trial court erred in denying his motion to suppress a pre-*Miranda* confession. We affirm.

## FACTS

On the evening of June 16, 1991, nineteen-year-old Anthea Benally and eighteen-year-old Brent Hoth were on duty at the Kar Kwik convenience store located at Seventh Street and Washington in Ogden, Utah. At approximately 9:50 p.m. a man entered the store, grabbed a bag of chips, and asked Benally to get him a package·of cigarettes from behind the counter. At that time, no other customers were in the store and Hoth was out of sight, cleaning up a spill in the back of the store. When Benally turned to ring up the sale, the man stepped behind the counter and said in a quiet voice, "This is a robbery." Benally initially laughed, assuming that the individual was kidding. The man then grabbed Benally's arm, threatened her with a pair of scissors held about five inches from her stomach, and said, "Open up the till now or else I'm going to stab you and then go for your partner." At about this time, Hoth appeared from the other end of the store and approached the counter, still not aware that anything was wrong.

Benally opened the till and the man released her. He grabbed approximately $300 in paper money, and stuffed it in his jacket pocket. He warned Hoth and Benally not to call the police and then told them to "get on your feet." Benally pointed out that they were already on their feet, and asked what he meant. The man, appearing a little embarrassed, turned and left the store. Benally and Hoth were unable to determine what direction he took because it was too dark outside to see.

Benally immediately called the police and gave them a description of the man who had robbed the store. "He was black, late 20's, early 30's, 5'10" or 5'11", medium build, [and had] short curly black hair. He had just a little bit of facial hair. He was wearing a dark blue slick kind of like a rain jacket. It had a lining [that] was light color[ed]."[2] The police arrived at the Kar Kwik shortly thereafter, and took Benally to a street corner to view a suspect. The suspect, Melvin White, was a black male wearing a blue jacket. Benally inspected White and said that he was similar to the robber in height and age, but that his jacket was not the one she remembered. To get a better look at White, Benally requested that the police move him into the headlights of the police car. At that point she positively identified him as the individual who had robbed the Kar Kwik. Benally saw White once more that evening in the halls of the police station and again identified him as the robber. She then gave a written statement to the police stating that White was the individual responsible for the Kar Kwik robbery.

Around 4 a.m. the following morning, the officer in charge of investigating the robbery, Detective John Stubbs, spoke with a woman named Gayle Herrera at the police station. Herrera, who appeared to be high on drugs, asked Stubbs if there had been a robbery earlier that night. Without answering the question, Stubbs asked what she had come to the station to discuss. Herrera said she had been driving around earlier that night with a man with whom she had been spending time for the past

---

1. Senior Judge Regnal W. Garff, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (1992).

2. Benally's initial description given during the telephone call is not part of the record. It apparently covered the man's height, skin color, and jacket. This more detailed description read into the record comes from Benally's written statement taken by the police.

two days. The two had been looking for cocaine, and eventually parked behind the Kar Kwik so that the man could borrow some money from relatives he said were nearby. He ran back to the car fifteen minutes later looking sweaty and scared. He had some money along with a handful of free car wash tickets and a check. When he got into the car Herrera heard him say, "What did I do with them scissors?" He then asked Herrera to touch the money, and when she did, he said that she was an accomplice.

Herrera's description of the physical appearance and blue jacket worn by her companion was very similar to the description given by Benally. To further identify this man, Herrera described his car, a Gray Buick Riviera, and gave three numbers from the license plate. She was unable to remember his name but thought that it was something like "K.K." and that the last name was short, beginning with a "C."

Stubbs spent the next day unsuccessfully trying to locate the person Herrera had described. On June 18, Stubbs called Herrera back into his office for further questioning about the identity of the man accompanying her on the evening of the 16th. Herrera took Stubbs to an apartment complex in Clearfield where she had spent some time with the individual she had described. Herrera pointed out the gray Buick Riviera they had driven that night, and gave Stubbs the number of the apartment in which the two of them had stayed.

Stubbs obtained a search warrant and, with four other detectives, served it on Hayes's brother who answered the door of the apartment. Although he claimed that Hayes was not in the apartment, the detectives looked through the various rooms in the apartment and located Hayes in one of the bedrooms. Stubbs informed Hayes that he was placing him under arrest for the robbery at the Kar Kwik on Seventh and Washington. Stubbs explained that he had a search warrant and was looking for the scissors and coat used in the robbery. At that point Hayes allegedly interrupted Stubbs and said that the coat was in the closet, he would plead guilty and he had

thrown the scissors somewhere but could not remember where because he had been "coked up." Stubbs stopped Hayes and read him his *Miranda* rights, after which all conversation ceased. The officer retrieved a blue jacket from the closet which Hayes admitted was his. Herrera later identified this jacket as the one Hayes was wearing on June 16, and both Benally and Hoth identified it as the one worn by the robber. The scissors were never found.

Sometime between June 18 and June 22, Stubbs met with Benally to discuss her written statement. Benally was no longer certain that she had identified the right person because White did not completely fit the description she had provided earlier to the police. On June 22, 1991, Stubbs arranged for a photo spread to be shown separately to Benally and to Hoth. Because White had an alibi, he was no longer a suspect and his photo did not appear in the photo spread. Both Benally and Hoth chose Hayes's photo from the spread.

Before trial began, Hayes moved to suppress his pre-*Miranda* confession on the grounds that it was the product of the functional equivalent of custodial interrogation. The court made a preliminary ruling denying the motion. After the trial court empaneled the jury, it conducted a hearing on the motion to suppress, outside the presence of the jury, at which Stubbs testified about the circumstances of Hayes's arrest. Because the court determined that Stubbs's statements to Hayes prior to his confession were not in any sense an interrogation, it again denied Hayes's motion.

At trial, Benally and Hoth again positively identified Hayes as the individual who robbed the Kar Kwik, and they both identified his blue jacket as the one the robber was wearing that evening. Herrera also identified Hayes as the person she spent time with on the evening of the robbery. She also testified about his fifteen-minute disappearance coinciding with the time of the robbery, his return to the car with money and Kar Kwik car wash coupons, and his comment about the scissors.

The jury convicted Hayes of aggravated robbery, and the court sentenced Hayes to the statutory term of five years to life imprisonment. Hayes appeals, arguing that his pre-*Miranda* confession to the crime should have been suppressed by the trial court. In addition, Hayes claims that there was insufficient evidence to convict him of aggravated robbery, primarily due to Benally's misidentification of another suspect on two occasions.

## ANALYSIS

### Pre-*Miranda* Confession

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612. The Court, in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), further held that these safeguards "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300, 100 S.Ct. at 1689. The Court defined the "functional equivalent" of interrogation as,

> any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Id.* at 301, 100 S.Ct. at 1689–90 (emphasis added) (footnotes omitted).

Hayes claims on appeal that his post-arrest confession should be suppressed under the federal constitution [3] because the confession was a product of custodial police interrogation or its functional equivalent. He argues that when Stubbs informed him of the reasons for the arrest and the scope of the search warrant, Stubbs's demeanor was accusatory and it was virtually the same as directly asking Hayes where he hid the coat and scissors used to commit the robbery at the Kar Kwik.

■ In reviewing the trial court's denial of Hayes's motion to suppress, we examine the underlying factual findings for clear error, and " 'review the trial court's conclusions of law based thereon for correctness.' " *State v. Gray*, 851 P.2d 1217, 1220 (Utah App.1993) (quoting *State v. Brooks*, 849 P.2d 640, 643 (Utah App.1993)). Whether Stubbs subjected Hayes to interrogation or its functional equivalent is a factual determination reviewed with deference to the trial court for clear error. *Layton City v. Aragon*, 813 P.2d 1213, 1215–16 (Utah App.1991).

The trial court's limited factual findings supporting the denial of Hayes's motion to suppress note simply that "[s]ince this [confession] was not in response to interrogation, ... even though it was clearly a custodial situation, ... the Motion to Suppress is denied." Based on our review of the record, we determine that the trial court did not commit clear error in finding that Hayes's confession was not the product of interrogation and concluding that the confession was, therefore, admissible.

In defining "interrogation" for *Miranda* purposes, the *Innis* Court specifically excluded words that are "normally attendant to arrest and custody." *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689. In this case, the only remarks Stubbs directed at Hayes before Hayes interrupted with his confession were statements statutorily required incident to arresting a suspect or carrying out a search warrant. Stubbs first told Hayes that he was under arrest because Stubbs believed that he committed the robbery at the Kar Kwik. This information is required under Utah Code Ann. § 77-7-6

---

**3.** Hayes also refers to violation of the state constitution, but does not brief the state constitutional issue separately. In the absence of independent state constitutional analysis, we will not reach this issue. *State v. Archambeau*, 820 P.2d 920, 927 n. 13 (Utah App.1991) (citations omitted).

(1990), which states that, "The person making the arrest shall inform the person being arrested of his intention, cause and authority to arrest him." *See also State v. Wilson*, 701 P.2d 1058, 1059 (Utah 1985) (merely providing arrested individual with information required by section 77–7–6 does not constitute custodial interrogation). Stubbs next informed Hayes that he believed a blue jacket and a pair of scissors were used in the commission of the robbery, and Stubbs had a search warrant to search for them. This information was provided pursuant to Utah Code Ann. § 77–23–10 (1990), requiring that where appropriate, an officer shall provide notice of his or her authority and purpose in executing a search warrant.

Hayes concedes that no express questioning took place. He instead contends that the accusatory manner in which Stubbs informed him of the reason for his arrest and the items sought under the search warrant prompted his confession. He claims that Stubbs's demeanor converted the conversation into the functional equivalent of interrogation. We cannot agree. The brief explanation Stubbs gave for his presence and Hayes's arrest was not unreasonable and included no compulsion beyond what was incident to custody itself. Therefore, the conversation did not constitute the "functional equivalent" of custodial interrogation referred to in *Miranda.* Furthermore, Stubbs's statements, without more, would not reasonably be expected to produce a confession. Hayes presented no evidence to indicate either his peculiar vulnerability to Stubbs's statements or any unusual circumstances compelling his confession. Because Hayes interrupted Stubbs while he was merely giving information that is "normally attendant to arrest and custody," and that is mandated by Utah law, Hayes's confession was not the result of interrogation or its functional equivalent, but was instead a spontaneous and voluntary utterance.

### Sufficiency of the Evidence

■ Hayes contends that the testimony at trial was insufficient to establish that he was responsible for the robbery. He claims (1) that Benally's testimony was not credible given her prior misidentifications of White as the robber, (2) that Hoth's testimony deserves little weight due to his limited contact with the robber, and (3) that Herrera's testimony should have been rejected because she was a prostitute, drug addict, and thief who could offer only circumstantial evidence that Hayes robbed the Kar Kwik.

When reviewing a claim of insufficiency of the evidence, this court views the evidence in the light most favorable to the jury's verdict. *State v. Lemons*, 844 P.2d 378, 381 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah 1993). Reversal is appropriate "only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Burk*, 839 P.2d 880, 884 (Utah App.1992) (quoting *State v. Salas*, 820 P.2d 1386, 1387 (Utah App. 1991)), *cert. denied*, 853 P.2d 897 (Utah 1993). When challenging the sufficiency of the evidence, "[d]efendant has the burden of marshaling all the evidence that supports the verdict, and then showing that, when viewed in the light most favorable to the verdict, the evidence is insufficient." *State v. Vigil*, 840 P.2d 788, 793 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah 1993).

Regarding Benally's testimony, the jury was informed of her prior misidentifications, her explanation for the mistake and her belief that she had finally correctly identified Hayes as the individual who robbed Kar Kwik. At that point it was "within the province of the jury to decide whether or not to believe [Benally] in light of [her] prior inconsistent statements." *Id.* at 793–94. As for Hoth and Herrera's testimony, determinations of witness credibility are left to the jury. The jury is free to believe or disbelieve all or part of any witness's testimony. *State v. Jonas*, 793 P.2d 902, 904–05 (Utah App.), *cert. denied*, 804 P.2d 1232 (Utah 1990). Thus, assuming the jury believed the witnesses, the

question for this court is whether the evidence provided by the witnesses "is so insubstantial that the jury must necessarily have entertained a reasonable doubt that the defendant committed the crime charged." *Id.* at 905.

In this case, two eyewitnesses to the crime, Benally and Hoth, said they were certain that Hayes was the individual who robbed Kar Kwik. Another witness, Herrera, was able to place Hayes in the Kar Kwik environs at the approximate time of the crime. Further, Herrera offered the police details about the Kar Kwik robbery, particularly about the use of scissors in the robbery, before anything was publicly known about the robbery. Finally, Hayes confessed to committing the crime soon after being arrested.

The evidence is not so inconclusive or improbable that reasonable minds would have doubted whether Hayes was guilty as charged. Review of the evidence in the light most favorable to the jury verdict demonstrates ample support for the jury's determination that Hayes was guilty.

## CONCLUSION

The trial court did not err in denying Hayes's motion to suppress his pre-*Miranda* confession. Hayes interrupted with his confession while Stubbs was providing information "normally attendant to arrest and custody." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689 (1980). Under these circumstances, Hayes's confession was voluntary and spontaneous. The determination that Hayes's confession is admissible likewise bolsters our determination that the State presented sufficient evidence to convict Hayes of the Kar Kwik robbery. For the foregoing reasons, we affirm the jury's conviction.

BILLINGS and GARFF, JJ., concur.