2004 UT App 40

**STATE of Utah, Plaintiff and Appellee,**

v.

**Matthew Stephen SHIPP, Defendant and Appellant.**

**No. 20020887–CA.**

Court of Appeals of Utah.

Feb. 20, 2004.

Tara L. Isaacson and Walter F. Bugden, Bugden & Isaacson LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, Karen A. Klucznik, and Matthew D. Bates, Assistant Attorneys General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

JACKSON, Judge:

¶ 1 Appellant Matthew Stephen Shipp appeals a conviction for six counts of aggravated sexual assault, first-degree felonies, in violation of Utah Code Annotated section 76–5–405 (1999). We reverse and remand for a new trial.

## BACKGROUND

¶ 2 On August 1 and 2, 2002, Shipp was tried before a jury on six counts of aggravated sexual assault. Immediately before the jury returned a verdict of guilty, the prosecutor informed the trial court that Detective Beesley, the prosecution's lead witness and case manager, had a conversation with Juror Chamberlain at the outset of trial.

¶ 3 The conversation took place during the seating of the prospective jurors, just before voir dire. Juror Chamberlain recognized Detective Beesley from her work at Primary Children's Hospital. Juror Chamberlain asked Detective Beesley if he went to the hospital frequently, and Detective Beesley responded that he went to the hospital "all the time" in his capacity as an officer with the special victims unit. Detective Beesley

also confirmed that his duties included bringing abused children to the hospital. Detective Beesley did not inform the court or the prosecutor about this contact until just before the jury returned the verdict.

¶ 4 With both the prosecution's and the defense's permission, the trial court waited until the jury returned the verdict before taking testimony about the contact. The jury ultimately returned with a guilty verdict. In chambers, Juror Chamberlain acknowledged having had the conversation with Detective Beesley and that she had seen Detective Beesley at the hospital "on two or three cases, maybe more than that." She indicated that she did not know whether, in the course of her duties as a nurse, she had personally cared for any of the children Detective Beesley brought to the hospital, but indicated that it was possible.

¶ 5 Shipp filed a motion for a mistrial based on the improper juror contact with the State's witness. The trial court denied the motion, ruling that the contact was "merely incidental" and did not give rise to a presumption of prejudice. Shipp appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Shipp challenges the trial court's denial of his motion for mistrial. We review a denial of a motion for mistrial for abuse of discretion. *See State v. Swain*, 835 P.2d 1009, 1010 (Utah Ct.App.1992).[1]

## ANALYSIS

¶ 7 *State v. Pike*, 712 P.2d 277 (Utah 1985), controls our decision in this case. In *Pike*, the Utah Supreme Court held that any contact between a juror and a witness, party, or court personnel that "is more than incidental" warrants the attachment of a presumption of prejudice. *Id.* at 280. Utah courts "have long taken [this] strict approach," *id.* at 279, because contacts between jurors and other interested persons may "breed[ ] a sense of familiarity that could

---

1. Shipp also brought other challenges to his convictions, but we decline to address them because the improper juror contact is dispositive.

clearly affect the juror's judgment as to credibility." *Id.* at 281.

Pike identified two reasons for the existence of the rebuttable presumption. First, it is difficult, if not impossible, to prove how an improper contact may have influenced a juror.... The second reason for the presumption is that an improper juror contact creates an appearance of collusion or impropriety in the proceedings from which the judicial process may suffer in the eyes of the public. If improper juror contact is not prevented, a doubt may exist in the mind of the losing party, and the public as a whole, as to whether the defendant was given a fair trial.

*State v. Swain*, 835 P.2d 1009, 1011 (Utah Ct.App.1992).

■ ¶ 8 Any contact between a juror and a witness will raise the presumption of prejudice if it is more than incidental. *See Pike,* 712 P.2d at 280; *State v. Erickson*, 749 P.2d 620, 621 (Utah 1987) (determining an improper "conversation was more than a brief, incidental contact where only remarks of civility were exchanged" because "personal matters such as family members and the witness's job were discussed"); *State v. Jonas*, 793 P.2d 902, 909 (Utah Ct.App.1990) (stating a contact is more than incidental if it involved conversation "in the normal sense of an oral exchange of sentiments, observations, opinions, [or] ideas" (quotations and citation omitted)); *Logan City v. Carlsen*, 799 P.2d 224, 227 (Utah Ct.App.1990) (stating the scope and subject matter of a conversation between juror and witness or court personnel are irrelevant if the conversation goes beyond mere pleasantries).

¶ 9 In this case, Juror Chamberlain approached Detective Beesley, the State's key witness, and engaged him in a short conversation. That conversation reinforced Juror Chamberlain's memory of having seen Detective Beesley at work, and further identified Detective Beesley's participation in the investigation and prosecution of cases involving abused children. This conversation unquestionably went beyond mere civilities, *see Erickson,* 749 P.2d at 621 (holding conversation went beyond mere civilities where witness's work was discussed), and had a tendency to

"breed[ ] a sense of familiarity that could clearly affect the juror's judgment as to credibility." *Pike,* 712 P.2d at 281.

¶ 10 The State cites *Jonas* and *State v. Day,* 815 P.2d 1345, 1349 (Utah Ct.App.1991), for the proposition that the conversation between Juror Chamberlain and Detective Beesley was merely incidental and did not give rise to the presumption of prejudice. In *Jonas,* a bailiff informed the jury that one juror would be replaced because his sister had been shot. 793 P.2d at 907. The comment was made to all of the jurors together, and the jurors made no response. *See id.* at 909. We noted "[t]here was no exchange at all because the *jurors* said nothing. The bailiff merely conveyed information about why juror Davis would not be present for the balance of trial." *Id.* (emphasis added).

¶ 11 *Day* involved a juror left behind by the other jurors during a lunch break. *See* 815 P.2d at 1349. At the instruction of the judge, the court clerk and a witness drove the juror to meet the other jurors. *See id.* The three men did not engage in any conversation during the drive, and thus the contact was merely incidental, not giving rise to the presumption of prejudice. *See id.*

¶ 12 *Jonas* and *Day* are distinguishable from the present case. Those cases both involved absolutely no conversation between the jurors and the court personnel and/or witness. In this case, however, Juror Chamberlain told Detective Beesley that she recognized him and said, "You come with the child abuse cases, and I have seen you with a couple of cases of child abuse at Primary Children's Hospital." Detective Beesley answered "yes." Detective Beesley further stated that he had been at the hospital as part of his normal work responsibilities with the special victims unit. The exchange between the two encompassed observations as to Detective Beesley's professional contact with abused children at Primary Children's Hospital, where Juror Chamberlain worked caring for children, thus going beyond mere civilities.

■ ¶ 13 The State argues two further reasons why the conversation was merely incidental. First, it makes much of Detective

Beesley's apparent passiveness in the conversation. However, the *Pike* rule is concerned with the biasing effect on the juror, *see* 712 P.2d at 281, not the witness's or the State's fault in the matter. We have previously held a conversation instigated by a juror to be improper and to raise a presumption of prejudice. *See State v. Swain*, 835 P.2d 1009, 1011 (Utah Ct.App.1992); *cf. Jonas*, 793 P.2d at 909 ("There was no exchange at all because the *jurors* said nothing." (Emphasis added.)).

▮ ¶ 14 Second, the State argues that the conversation was "so brief and unrevealing that no reason exists to presume the encounter affected Ms. Chamberlain's ability to assess the detective's credibility." However, the *Pike* rule is concerned not only with the biasing influence on the juror herself, but also with the "deleterious effect upon the judicial process because of the appearance of impropriety." 712 P.2d at 280. Further, not only the subject matter, but also the *scope* of the conversation, are irrelevant in determining whether the presumption of prejudice attaches. *See Logan City v. Carlsen*, 799 P.2d 224, 227 (Utah Ct.App.1990).

▮ ¶ 15 Once the presumption of prejudice attaches, as it does here, the burden shifts to the State "to prove that the unauthorized contact did not influence the juror." *Pike*, 712 P.2d at 280. The presumption will not be rebutted by the juror's own testimony that she was not influenced by the contact, *see id.*, because "improper contacts may influence a juror in ways he or she may not even be able to recognize." *Id.; see also State v. Swain*, 835 P.2d 1009, 1011 (Utah Ct.App.1992) ("[M]ere denial of prejudice by the tainted juror is ... insufficient to overcome the presumption of prejudice.").

¶ 16 However, not only did the trial court not inquire of Juror Chamberlain whether the conversation made her more likely to consider Detective Beesley's testimony more credible, it made no inquiry at all about the effect of the conversation on the outcome of the trial because it had already erroneously determined that no presumption of prejudice attached. The State offered no evidence dispelling the presumed prejudice, and even on appeal the State cites to nothing in the record that would counter the prejudice that presumptively arose out of the conversation. It cites instead to general comments Juror Chamberlain made during voir dire indicating her impartiality. These general statements are doubly unavailing because, not only do a juror's statements of impartiality not successfully rebut the presumption of prejudice, but also these particular statements of impartiality were made before, and not in response to, specific allegations of improper contact.

¶ 17 The State cites to *State v. Larocco*, 742 P.2d 89 (Utah Ct.App.1987), *rev'd on other grounds*, 794 P.2d 460 (Utah 1990), for the proposition that the presumption of prejudice was rebutted in this case. In *Larocco*, we held that the trial court "reasonably determined that the [S]tate had sustained its burden of demonstrating that no prejudice against defendant resulted from the [improper] contact." *Id.* at 96. This determination was not based on the content or scope of the improper contact itself, but rather on the basis that

(1) the juror stated she was not influenced by the contact; (2) [the witness] was not a key witness nor in such a respected position that he would likely be influential; and most importantly, (3) the testimony presented at trial by police officers was uncontroverted, so that their credibility was not an issue.

*Id.* The first of these reasons appears to be against the clear weight of authority in Utah, because subsequent cases have held that the juror's own denials of bias are inadequate to overcome the presumption of prejudice. *See Swain*, 835 P.2d at 1011.

¶ 18 The final two reasons cited in *Larocco*, however, may still have precedential value. The witness in *Larocco* was not a key witness or likely to be influential, and his testimony was virtually uncontroverted so that his credibility was not an issue. Thus, although the presumption of prejudice attached, the witness's minimal involvement in the prosecution rendered it extremely unlikely to have affected the defendant's rights. Had the witness played a larger role in the prosecution, or had the witness's testimony played a small

but critical and controverted role, any juror bias in favor of that witness would have made a difference in the outcome of the trial.

¶ 19 In this case, however, the witness who improperly conversed with a juror was not a relatively unimportant and uncontroverted piece of the prosecution's case. He was, in fact, a key witness with case management responsibilities. Thus, we cannot apply *Larocco* to determine that the State successfully rebutted the presumption of prejudice. In fact, *Larocco* actually strengthens Shipp's argument that he was prejudiced by the improper contact by placing Detective Beesley in the category of witnesses who may significantly affect the outcome of the trial.

## CONCLUSION

¶ 20 The State did not successfully rebut the presumption of prejudice. Accordingly, given the clear case law on point, we have no choice but to "conclude that the trial court abused its discretion in denying [Shipp's] motion for a mistrial. We therefore reverse [Shipp's] conviction and remand for a new trial." *Swain*, 835 P.2d at 1011.

¶ 21 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.