2005 UT 35

**STATE of Utah, Plaintiff and Respondent,**

v.

**Matthew Stephen SHIPP, Defendant and Petitioner.**

No. 20040231.

Supreme Court of Utah.

June 10, 2005.

318

Mark L. Shurtleff, Att'y Gen., Matthew D. Bates, Asst. Att'y Gen., Paul B. Parker, Salt Lake City, for plaintiff.

Walter F. Bugden, Jr., Tara L. Isaacson, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 The State of Utah seeks certiorari review of a court of appeals decision, holding that a trial, wherein defendant Matthew Shipp was convicted on six counts of aggravated sexual assault, was, in fact, a mistrial because of a pre-voir dire conversation between a prospective juror and one of the State's witnesses. The court of appeals remanded the case to district court for a new trial. We reverse the court of appeals and affirm Shipp's conviction.

## BACKGROUND

¶ 2 On August 2, 2002, as the jury was concluding its deliberations after a two-day trial on Shipp's six aggravated sexual assault charges, one of the State's witnesses, police detective Michael Beesley, informed the prosecuting attorney that he had engaged in a brief conversation with one of the jurors, Ms. Chamberlain, before the jury was empaneled. The prosecutor relayed the information to defense counsel and the court, and they all agreed to await the verdict before investigating the matter further. The jury returned a guilty verdict on all six counts. The court then held hearings with both Juror Chamberlain and Detective Beesley to explore the extent and possible ramifications of their contact.

¶ 3 Juror Chamberlain and Detective Beesley both testified that the conversation in question occurred when the prospective jurors were being seated just prior to voir dire. Their respective versions of the conversation were as follows:

Detective Beesley:

[Detective Beesley]: ... Everybody was coming in and sitting down, as I recall. She [Juror Chamberlain] sat down and asked me, "Do I know you?" I said, "No." And then a few seconds later she said, "Do you go to the hospital much?" I said, "All the time." And she said, "That's where I have seen you." And then I motioned, got to cut this off.

Q [from the court] Do you know her?

A No.

Q Ever had any conversation with her before?

A No.

Q Ever had any relationship with her?

A No.

Juror Chamberlain:

Juror Chamberlain: I just told him that I recognized him from Primary Children's Hospital.

The Court: Did he say anything in response?

Juror Chamberlain: He didn't say he recognized me.

The Court: Did he say anything?

Juror Chamberlain: I said, "You come with the child abuse cases, and I have seen you with a couple of cases of child abuse at Primary Children's Hospital." And he said, "Yes."

The Court: Anything else transpire?

Juror Chamberlain: No.

¶ 4 Following these examinations, Shipp moved for a mistrial on the ground that Juror Chamberlain's failure to disclose her relationship with Detective Beesley during voir dire had an adverse effect on Shipp's right to a fair trial. The State and Shipp then submitted pleadings on the mistrial issue and presented their arguments at a hearing before the district court.

¶ 5 After reviewing the parties' respective arguments, the court denied Shipp's motion for a mistrial on two grounds. First, it analyzed Juror Chamberlain's testimony under the two-pronged test found in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984),[1] and concluded that Juror Chamberlain did not fail to answer truthfully a material question on voir dire and that her recognition of Detective Beesley was not a sufficient basis for a challenge for cause. Second, the district court concluded that the contact between Detective Beesley and Juror Chamberlain was "innocuous and incidental" and "fail[ed] to raise a question as to the impartiality of Ms. Chamberlain."

¶ 6 In reviewing the district court's decision, the court of appeals held that our decision in "*State v. Pike*, 712 P.2d 277 (Utah 1985), controls [the court of appeals'] decision in this case." *State v. Shipp*, 2004 UT App 40, ¶ 7, 86 P.3d 763. In *Pike*, we considered whether the contact between one of the State's witnesses and a juror during a recess in a criminal trial deprived the defendant of his right to an impartial jury and held that when such a contact is "more than incidental, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror." *Id.* at 279–80.

1. The precise contours of the *McDonough* standard will be discussed below. *Infra* ¶ 19.

¶ 7 Analyzing the contact between Juror Chamberlain and Detective Beesley in light of our *Pike* decision, the court of appeals determined that their contact was more than incidental, *Shipp*, 2004 UT App 40 at ¶ 9, 86 P.3d 763, and that the State failed to rebut the presumption of prejudice that consequently arose, *id.* at ¶ 20. The court therefore reversed Shipp's conviction and remanded to the district court for a new trial. *Id.* The State now brings this petition.

## ANALYSIS

### I. APPLICABILITY OF *PIKE*

¶ 8 We review the court of appeals' decision for correctness and grant no deference to its conclusions of law. *State v. James*, 2000 UT 80, ¶ 8, 13 P.3d 576. We begin by reviewing the court of appeals' application of the *Pike* test to the case before us. In *Pike*, the defendant, after being convicted in a jury trial, requested a new trial on the basis that he was unfairly prejudiced when three jurors had a brief conversation with a key State witness during a recess in the trial. 712 P.2d at 279. We held that "[a]nything more than the most incidental contact during the trial between witnesses and jurors casts doubt upon the impartiality of the jury and at best gives the appearance of the absence of impartiality." *Id.* at 279–80. We reiterated our rule that such contact "raises a rebuttable presumption of prejudice," which places the burden upon "the prosecution to prove that the unauthorized contact did not influence the juror." *Id.* at 280.

¶ 9 We advanced two reasons for our holding in *Pike.* First, the rebuttable presumption is necessary because of "the inherent difficulty in proving how or whether a juror has in fact been influenced by conversing with a participant in the trial." *Id.* Such difficulty stems in part from the fact that "prejudice may well exist even though it is not provable and even though a person who [has] been tainted may not, himself, be able to recognize that fact." *Id.*

¶ 10 Second, we reasoned that contact between jurors and witnesses creates an "appearance of impropriety" that has a "delete-

rious effect upon the judicial process." *Id.* We noted that "mingling of jurors and prominent witnesses could not be condoned because 'it is probable that a doubt must and will continue to exist in the mind of the losing party and that of his friends as to whether or not he had a fair trial.'" *Id.* (quoting *Glazier v. Cram*, 71 Utah 465, 267 P. 188, 190 (1928)).

¶ 11 Based on the foregoing reasons, we held that the State must prove that the juror was not influenced by an unauthorized encounter with one of the parties. *Pike*, 712 P.2d at 280. A mere showing that the juror denied being influenced by the encounter was not enough. *Id.* at 281.

¶ 12 The State does not dispute the merits of the *Pike* presumption. It merely contends that while a *Pike* analysis is appropriate when considering juror-witness contact that occurs after voir dire, it does not apply to pre-voir dire contact, as occurred in this case, because the voir dire process itself is the mechanism for detecting possible biases of prospective jurors. Instead, the State insists that we should analyze Juror Chamberlain's alleged omissions during voir dire concerning her contact with Detective Beesley under the two-pronged test enunciated by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). In *McDonough*, the Supreme Court established a framework, which we have adopted, *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992), for approaching juror challenges based on such alleged omissions.

¶ 13 Shipp, on the other hand, contends that the same concerns about the "appearance of impropriety" that we noted in *Pike* apply to contact between a witness and juror "whether the contact occurs in the parking lot, on the way into court, [or in] the courtroom before or during a recess." Shipp argues that since the prospective jurors in this case had already filled out a questionnaire and were being seated for in-court voir dire when the contact occurred, there was enough of an "appearance of impropriety" to cause a presumption of prejudice.

¶14 Underpinning our opinion in *Pike* is our obligation to protect the constitutional guarantee of a trial by an impartial jury. 712 P.2d at 279; *see* Utah Const. art. I, § 10. Although contact before voir dire may implicate the concerns we raised in *Pike* relating to the appearance of impropriety and the possibility of influence over the juror, the voir dire process, as the State correctly asserts, already exists as a means to unearth and assess any possible bias and prejudice in potential jurors. *See State v. Reed*, 2000 UT 68, ¶11, 8 P.3d 1025 ("'Voir dire examination has as its proper purposes both the detection of actual bias and the collection of data to permit informed exercise of the peremptory challenge.'" (quoting *State v. Taylor*, 664 P.2d 439, 447 (Utah 1983))); *State .v. Saunders*, 1999 UT 59, ¶34, 992 P.2d 951 ("Voir dire is intended to provide a tool for counsel and the court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it."). Furthermore, attaching a *Pike* presumption of prejudice with its associated rebuttal requirement to any pre-voir dire interactions of a prospective juror would not only dilute our longstanding voir dire procedure, but also place an unfair and improper burden on the State.

¶15 Nevertheless, Shipp argues that the voir dire filtering process failed in this case because it did not detect the contact between Juror Chamberlain and Detective Beesley, therefore making the *Pike* presumption a necessary remedy.[2] However, Utah courts already have a mechanism in place for remedying allegedly dishonest responses to voir dire questions. As recently as last November, we reiterated our long-standing position that the test articulated in *McDonough*, 464 U.S. at 556, 104 S.Ct. 845 governs "post-trial challenges to a juror based on the juror's alleged misstatements or omissions during voir dire." *West v. Holley*, 2004 UT 97, ¶11, 103 P.3d 708.

¶16 In the case before us, the court of appeals did not examine the alleged juror misconduct as required by our cases adopting the *McDonough* test. Rather, it applied the *Pike* presumption to the contact between Juror Chamberlain and Detective Beesley that occurred before voir dire and conducted its analysis of the district court's decision in light of that standard. *Shipp*, 2004 UT App 40 at ¶7, 86 P.3d 763. However, we have never extended the *Pike* presumption to pre-voir dire contact. In the two instances where we have addressed whether juror-witness contact has infringed on jury impartiality, the contact occurred during trial after voir dire. *State v. Erickson*, 749 P.2d 620, 620 (Utah 1987); *Pike*, 712 P.2d at 279. Furthermore, in all the court of appeals cases that subsequently applied *Pike*, the contact between witness and juror occurred after voir dire. *See, e.g., State v. Swain*, 835 P.2d 1009, 1010 (Utah Ct.App.1992); *State v. Day*, 815 P.2d 1345, 1349 (Utah Ct.App.1991).

¶17 Given the district court's ability in voir dire to ferret out a prospective juror's prejudice or bias and, under *McDonough*, to correct alleged juror misconduct that occurs during voir dire, it is clear that the *Pike* presumption is neither a necessary nor appropriate remedy for the alleged prejudice that arose from the contact between Juror Chamberlain· and Detective Beesley before voir dire. Indeed, we categorically hold that the *Pike* presumption of prejudice does not apply to contact that occurs before the completion of voir dire under any circumstances, but applies to events that occur only after the jury has been empaneled. We turn now to a *McDonough* analysis of Juror Chamberlain's alleged misstatements during voir dire.

## II. ANALYSIS UNDER *McDONOUGH*

■ ¶18 The State contends that a *McDonough* analysis is beyond the scope of the issues it presented in its Petition for Certiorari, and that we should remand to the court of appeals for analysis of Juror Chamberlain's voir dire responses under that test. We are disinclined to review issues not raised in a petition for certiorari. *See Coulter &*

---

2. According to Shipp, the failure in voir dire occurred when the court asked the prospective jurors, "Does anybody know or recognize the names of any witnesses [the prosecutor] has identified?" Juror Chamberlain did not respond, although Detective Beesley was among the witnesses.

*Smith, Ltd. v. Russell,* 966 P.2d 852, 856 (Utah 1998) ("Review on certiorari is limited to examining the court of appeals' decision and is further circumscribed by the issues raised in the petitions."). However, rule 49(a)(4) of the Utah Rules of Appellate Procedure states that we will consider on certiorari review "questions set forth in the petition *or fairly included therein.*" Utah R.App. P. 49(a)(4) (emphasis added). Inasmuch as the State proposed the *McDonough* test before the court of appeals and this court as the requisite analysis, and both parties have fully briefed the merits of this case under the *McDonough* test, we conclude that the *McDonough* analysis is fairly included in the issues certified and properly before us for consideration.

¶ 19 Under the *McDonough* test, we first determine "whether the juror in question failed to truthfully answer questions posed in voir dire," and, second, "whether truthful answers, if known at the time, would have supplied a valid basis for removing the juror for cause." *West v. Holley,* 2004 UT 97, ¶ 11, 103 P.3d 708. Both elements are necessary to successfully challenge the participation of the juror in question. Furthermore, we grant "considerable discretion" to a trial judge in deciding to dismiss a juror for cause. *Id.* at ¶ 12.

¶ 20 On the first issue of whether a juror failed to answer a voir dire question truthfully, we review the court's decision under a clearly erroneous standard. *State v. Thomas,* 830 P.2d 243, 245 (Utah 1992). "To show clear error, the [contesting party] must marshal all of the evidence in support of the trial court's finding and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack." *State v. Higginbotham,* 917 P.2d 545, 548 (Utah 1996).

¶ 21 Shipp alleges that when the trial judge asked if anyone "kn[e]w or recognize[d] the names of [the State's witnesses]," and Juror Chamberlain did not indicate that she knew Detective Beesley, she failed to answer truthfully a question posed in voir dire, thus satisfying the first prong of the *McDonough* test. The trial court, however, found that Juror Chamberlain was honest in response to the question and provided the following reasons:

> Her *in camera* testimony provided that she had seen [Detective Beesley] in the past, did not know his name, and knew only that he was an officer who worked for the Salt Lake City Police Department. She had no knowledge of his involvement in this case, nor had she, to the best of her knowledge, ever had any conversations with Detective Beesley. There is no evidence that Ms. Chamberlain knew Mr. Beesley. This was simply a recognition of an individual she had previously seen during the course of her employment.

¶ 22 Shipp has failed to demonstrate how Juror Chamberlain could possibly "know or recognize the name" of Detective Beesley, given her own testimony that she neither knew him nor recognized his name. Shipp does point us to the dictionary definition of "know" in an attempt to turn Juror Chamberlain's recognition of Detective Beesley's face at the hospital into some form of "professional acquaintance." However, although Juror Chamberlain admits to have recognized the detective's face, her testimony is clear that she did not know him beyond that superficial recognition.[3] Consequently, we conclude that it was not error, clear or otherwise, for the district court to find that recognizing the face of an individual one has seen in a hospital three or four times does not amount to knowing that person. As such, Juror Chamberlain did not fail to answer truthfully the question posed her in voir dire concerning the State's witnesses, and the

---

**3.** In the post-trial in camera proceedings, the court asked Juror Chamberlain two times why she failed to mention that she recognized Detective Beesley when asked if she "kn[e]w or recognize[d] the name" of any of the State's witnesses. She first responded, "I guess I didn't, because I don't really know him. I just recognized him as a detective." When asked again whether "[she] had any thought that [she] knew [Detective Beesley]," she replied, "I didn't. I didn't even think of that. I was actually thinking of that nurse that came. I hadn't met her before. I had just heard of her."

first element of the *McDonough* test is not met. Without more, no mistrial is required.

## CONCLUSION

¶ 23 We hold that the presumption of prejudice explained in our decision in *Pike* applies only to events that occur after the jury has been empaneled, and that the district court properly analyzed Juror Chamberlain's alleged omissions in voir dire under our cases adopting the two-pronged test in *McDonough*. Since the facts here fail to satisfy the *McDonough* test, we reverse the court of appeals and affirm Shipp's conviction.

¶ 24 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.