2007 UT App 350

**STATE of Utah, Plaintiff and Appellee,**

v.

**Carla M. REDDING, Defendant and Appellant.**

**No. 20051078–CA.**

Court of Appeals of Utah.

Oct. 25, 2007.

Edward K. Brass, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Kenneth A. Bronston, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Defendant Carla M. Redding appeals her convictions for negligent homicide, a class A misdemeanor, *see* Utah Code Ann. § 76–5–206 (2003); negligent collision, a class B misdemeanor, *see* Salt Lake County, Utah, Ordinance § 11.12.090 (2006); and speeding, a class C misdemeanor, *see* Utah Code Ann. § 41–6a–601 (2005). We affirm.

## BACKGROUND[1]

¶ 2 On June 8, 2002, at 11:25 p.m., Defendant, an on-duty Salt Lake County Sheriff's Deputy was assisting with a domestic violence arrest when she received a dispatch call concerning Detective Saul Bailey's request for back-up assistance with a traffic stop at Coconut Point, a dance club with a reputation among officers as a very dangerous location. Defendant responded to the back-up request and informed dispatch that she was en route. Initially, Defendant drove at the posted speed limit of forty miles per hour. Within the same minute, at 11:25 p.m., Bailey made a second request for back-up assistance asking officers to "step it up a little bit." At that point, Defendant, who was driving east on 5415 South, began to accelerate, ultimately traveling approximately seventy miles per hour without turning on her emergency lights or siren.[2]

¶ 3 At the same time, Emily Hillam, accompanied by three of her girlfriends, was driving west on 5415 South on the way to a friend's house. As Hillam approached the driveway to her friend's house, she pulled into the middle turn lane and signaled her turn. Hillam saw a single set of headlights from an oncoming car about a half a mile away near where the road dipped beneath a railroad bridge. She did not see anything coming toward her and proceeded to turn into the driveway.

¶ 4 Defendant saw Hillam's car start to make a lefthand turn in front of Defendant and tried to evade Hillam's vehicle by turning the steering wheel left. Defendant's patrol vehicle crashed into the right side of Hillam's car between the front and rear passenger doors. The impact separated the back-end of Hillam's vehicle from the front portion. The two backseat passengers were thrown from the car with one suffering scrapes and bruises and the other dying as a result of injuries sustained in the accident.

¶ 5 On May 29, 2003, Defendant was charged with negligent homicide, negligent collision, and speeding. A jury trial was held in June 2004. At trial, during direct examination of Trooper Jason McCleve, the prosecutor inquired about McCleve's telephone interview of Defendant. In the course of questioning, McCleve revealed that Defendant had invoked her right to counsel. Defense counsel requested a sidebar and the trial court held an off-record sidebar wherein defense counsel moved for a mistrial based on McCleve's testimony. The trial court denied the motion. At the conclusion of the State's case, defense counsel requested the trial court to dismiss the negligent homicide charge due to insufficient evidence. The trial court also denied this motion.

¶ 6 During rebuttal closing, the prosecutor argued that the emergency at Coconut Point had ended two minutes before Defendant's car accident and that Defendant should have known the emergency was over. Defense counsel objected, asserting that this argument was not supported by any evidence. In response, the prosecutor informed the trial court that the evidence was in the dispatch tape transcript. The trial court overruled the objection stating that it would allow the jury to determine what was in the evidence and decide accordingly.

¶ 7 On June 25, 2004, the jury convicted Defendant of all charges. On August 18, 2004, Defendant filed a motion to arrest the judgment, arguing that "the facts proved do not constitute the offenses." On August 23, 2004, the trial court denied that motion and sentenced Defendant.[3] That same day, Defendant filed a motion for a new trial based on juror misconduct and insufficient evidence to sustain the convictions for negligent homicide and negligent collision. The trial court held a hearing on the motion and denied it. Defendant now appeals.

---

1. "We view the facts in the light most favorable to the jury verdict and recite them accordingly." State v. Loose, 2000 UT 11, ¶ 2, 994 P.2d 1237.

2. At trial, Defendant testified that she had time to turn on her emergency equipment but did not do so.

3. Defendant's sentence included a jail term for each charge, with all but fourteen days on her negligent homicide conviction suspended.

ISSUES AND STANDARDS OF REVIEW

¶ 8 Defendant asserts that the trial court erred in denying her motion for a new trial wherein she alleged insufficient evidence and jury misconduct. "[I]t is well settled that, as a general matter, the trial court has broad discretion to grant or deny a motion for a new trial." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 25, 82 P.3d 1064 (internal quotation marks omitted). "Under this standard of review, we will reverse only if there is no reasonable basis for the decision." *Id.* (internal quotation marks omitted).

■ ¶ 9 Defendant also asserts that the trial court erred in concluding that the prosecutor's direct examination of McCleve and closing arguments were not improper and thereafter denying Defendant's motion for a mistrial. "[O]nce a district court has exercised its discretion and denied a motion for a mistrial, we will not reverse the court's decision unless it is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *State v. Allen*, 2005 UT 11, ¶ 39, 108 P.3d 730 (citation and internal quotation marks omitted).

ANALYSIS

I. Motion for New Trial

¶ 10 Defendant maintains that the trial court exceeded its permitted range of discretion in denying her motion for a new trial. Defendant alleged in her motion that a new trial was required because (1) the facts of the case do not constitute criminal negligence, (2) jury misconduct occurred during voir dire, and (3) jury misconduct occurred during deliberation.

A. Sufficiency of the Evidence

■ ¶ 11 Defendant claims that there was insufficient evidence to show that her conduct constituted criminal negligence and asserts that her conduct was, at most, a mistake in judgment that did not amount to a gross deviation from the standard of care that an ordinary person would exercise given the circumstances. "[I]n reviewing a sufficiency of the evidence claim, we determine if each element of the charged offenses is sup-

ported by the required quantum of evidence." *State v. Larsen*, 2000 UT App 106, ¶ 9 n. 4, 999 P.2d 1252. "[T]he evidence and all reasonable inferences that may be drawn therefrom are viewed in the light most favorable to the jury verdict." *State v. Warden*, 813 P.2d 1146, 1150 (Utah 1991).

¶ 12 A person is guilty of negligent homicide if that person, acting with criminal negligence, causes the death of another. *See* Utah Code Ann. § 76–5–206(1) (2003). Under Utah law, a person acts with criminal negligence when " '[s]he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.' " *State v. Boss*, 2005 UT App 520, ¶ 11, 127 P.3d 1236 (alteration in original) (quoting Utah Code Ann. § 76–2–103(4) (2003)). The risk of death "must be of such a nature and degree that the failure to perceive it constitutes a *gross* deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint." Utah Code Ann. § 76–2–103(4) (2003) (emphasis added); *see also Boss*, 2005 UT App 520, ¶ 14 n. 2, 127 P.3d 1236 (noting that criminal negligence, unlike ordinary negligence, requires a gross deviation from the applicable standard of care).

¶ 13 Defendant maintains that her conduct, like that of the defendant in *State v. Larsen*, 2000 UT App 106, 999 P.2d 1252, represented only a serious mistake in judgment. In *Larsen*, this court concluded that Larsen's actions, i.e., failing to see an oncoming car which was visible to other drivers as he made a left turn, was a serious mistake in judgment but was not undertaken recklessly or with an indifference to human life. *See id.* ¶ 21. Unlike Larsen, Defendant drove approximately seventy miles per hour on a road with a posted speed limit of forty miles per hour. Defendant, who was driving approximately thirty miles over the posted speed limit at night through an area consisting of homes, should have expected to encounter obstacles such as bicyclists, pedestrians, or other vehicles. And due to darkness, Defendant should also have appreciated a decrease in her and others' abilities to safely handle unexpected obstacles while traveling at such speeds at night when vision may be impaired

by the dark of night which could create an unjustifiable risk of death. Because Defendant should have been aware that speeding under those circumstances, without activating emergency lights and siren, would create an unjustifiable risk of death, we simply cannot conclude that the evidence was insufficient to allow a reasonable juror to find Defendant guilty of criminal negligence.

¶ 14 Defendant also argues that this court should consider that her actions were taken for the purpose of quickly responding to render aid to a fellow officer. However, a reasonable person could well conclude that, notwithstanding any justification a police officer may have for speeding, such actions still created a substantial and unjustifiable risk of death when coupled with a failure to utilize emergency lights, absent a compelling reason to intentionally not utilize such warning lights.

¶ 15 In a related argument, Defendant asserts that the trial court's ruling is deficient for its failure to address issues of proximate and intervening causes. Specifically, Defendant argues that the driving errors Hillam made caused the accident. This argument was initially asserted in Defendant's motion to arrest the judgment, which the trial court denied. Defendant raised the issue again in her motion for new trial. The trial court held a hearing on Defendant's motion for new trial. Although the trial court's ruling does not specifically address the causation issue, the trial court reviewed the facts and determined that the evidence adequately supported the jury verdict.

¶ 16 At trial, Hillam testified that she pulled into the middle turn lane, saw a single set of headlights from an oncoming car about a half a mile away near where the road dipped beneath a railroad bridge. Hillam also testified that she signaled her turn, did not see anything else coming toward her, and

proceeded to turn into the driveway when Defendant, driving approximately seventy miles per hour, crashed into her car. Based on this evidence a jury could conclude that Hillam reasonably assumed that the approaching vehicle was traveling at or about the speed limit, that Hillam made no driving errors, and that Defendant, who was speeding without having activated her emergency lights, caused the accident. Thus, we cannot conclude that there is insufficient evidence for the jury to find that Defendant caused the accident.

## B. Jury Misconduct During Voir Dire

 ¶ 17 Defendant also contends that she is entitled to a new trial based on juror misconduct during voir dire. The Utah Supreme Court has adopted the two-pronged test set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), to determine when a juror's voir dire misconduct entitles a party to a new trial.[4] *See State v. Evans*, 2001 UT 22, ¶ 25, 20 P.3d 888. Under the *McDonough* test, a defendant "must show that the juror failed to answer honestly a material question on voir dire, and that a correct response would have provided a valid basis for a challenge for cause." *Id.* "To invalidate the result of a . . . trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555, 104 S.Ct. 845. "Both elements are necessary to successfully challenge the participation of the juror in question." *State v. Shipp*, 2005 UT 35, ¶ 19, 116 P.3d 317.

### i. Allegations of Jury Foreman Misconduct

 ¶ 18 Defendant argues that the jury foreman committed juror misconduct by failing to respond to voir dire questions about

4. The trial court did not analyze Defendant's juror misconduct allegations under the *McDonough* test, but rather held that it was limited by rule 606(b) of the Utah Rules of Evidence to inquire into a jury verdict or consider Defendant's affidavit evidence regarding jury deliberation. Nonetheless, although Defendant places much emphasis on the trial court's rule 606(b) ruling, both parties have fully briefed the merits of this case under the *McDonough* test, and we conclude that an analysis under *McDonough* is proper. *See State v. Shipp*, 2005 UT 35, ¶ 18, 116 P.3d 317. Because the trial court did not address the *McDonough* test, both prongs of the test are reviewable by this court as a matter of law. *See State v. Thomas*, 830 P.2d 243, 245 (Utah 1992).

being trained or employed as a peace officer and failing to reveal that he had superior knowledge about the case based on his employment as a private security guard. During voir dire, the trial court gave the panel, including the foreman, a list and asked each of them to provide the court with the general information outlined on the list, which included employment status. The foreman did not state his occupation. After gathering the general information from each juror, the trial court next read the information to the panel and subsequently asked them to raise their hands if they were employed in a law enforcement capacity. The trial court also asked the panel to raise their hands if they had served or been trained as a peace officer. The foreman did not raise his hand in response to either question.

¶ 19 Defendant asserts that the foreman failed to honestly answer a material question by failing to reveal his involvement and training in law enforcement. In support of this argument, Defendant provides affidavit evidence from various jurors which state that the foreman represented himself as being involved in law enforcement. Defendant also provides an affidavit from the investigator he hired to interview the jurors after the verdict, the affidavit stating that the foreman appears to be employed as a private security guard. However, this evidence is insufficient to demonstrate that the foreman failed to honestly answer the relevant voir dire question. At most, the evidence shows that the foreman was employed as a private security guard and that he told jurors that he was involved in law enforcement. Additionally, the foreman's alleged employment as a security guard in and of itself does not establish that he was trained as a peace officer. Because the affidavit evidence Defendant submitted does not establish that the foreman was in fact employed or trained as a peace officer, as the question was framed by the trial court, we cannot conclude that the foreman failed to honestly answer the trial court's voir dire questions about his employment and training. As a result, Defendant does not satisfy the first prong of the McDonough test, which requires Defendant to demonstrate that a juror has failed to honestly answer a relevant voir dire question.

¶ 20 Defendant further asserts that at the end of voir dire the trial court asked several catch-all questions wherein the foreman, who had previously learned about the criminal nature of the case, should have informed the trial court that his experience as a security guard gave him special knowledge about the case. The catch-all questions centered around the jurors' attitudes, frames of mind, and personal considerations that would influence their objectivity and impartiality. Defendant submitted four juror affidavits, two of which allege that the foreman told them that he had special knowledge about the case because of some prior experience in law enforcement. Indeed, the juror affidavits appear to suggest that the foreman considered his past employment experiences relevant in evaluating the case but they do not, without more, demonstrate that he would not act objectively or impartially. Nor do the juror affidavits suggest that the foreman was incapable of serving as a fair-minded juror to decide the case on its merits. As a result, Defendant has not shown that the foreman failed to honestly answer the trial court's catch-all questions concerning the jurors' attitudes, frames of mind, and personal considerations that would influence their objectivity and as such she does not satisfy the first prong of the McDonough test.

¶ 21 Because we conclude that Defendant has not established that the foreman provided an incorrect response to voir dire questions about his employment and training, we do not consider whether a correct response would have provided a valid basis for a challenge for cause. See Shipp, 2005 UT 35, ¶ 19, 116 P.3d 317 ("Both elements are necessary to successfully challenge the participation of the juror in question.").

ii. Allegations of Jury Panel Misconduct

¶ 22 Defendant also claims that all members of the jury falsely answered the trial court's questions, given at the end of voir dire, pertaining to the jurors' ability to obey the court's instructions to disregard the issue of punishment and extraneous evidence. Defendant submitted one juror affidavit that provides, "[the foreman] told the jurors that

if [Defendant] was convicted she would not spend any time in jail. . . . [The foreman] informed us, based on his experience in law enforcement, that the fact that the girls may have turned left in front of [Defendant] was irrelevant." Although the affidavit states that the foreman discussed the relevance of the lefthand turn and the punishment issue, it does not demonstrate that the jury panel untruthfully answered the trial court's questions pertaining to the jurors' ability to obey the court's instructions to disregard the issue of punishment and extraneous evidence. There is no evidence that the jury panel, at the time they responded to the trial court's questions relevant to their ability to obey the court's instructions to disregard the issue of punishment and extraneous evidence, intended to disregard those instructions. Without such evidence we cannot conclude that jurors dishonestly answered the trial court's questions on their ability to disregard the issue of punishment and any extraneous evidence. Because Defendant fails to establish that jurors' failed to answer honestly a material question on voir dire, we conclude that Defendant cannot prevail on this issue because she does not establish the first prong of the *McDonough* test.

## C. Jury Misconduct During Deliberation

¶ 23 Defendant asserts that jurors committed misconduct by relying on extraneous information, i.e., the dictionary definitions of various terms, instead of following the jury instructions. The trial court considered this argument in a hearing on Defendant's motion for new trial and denied the motion based in part on the invited error doctrine and in part on its conclusion that Utah Rule of Evidence 606(b), *see* Utah R. Evid. 606(b), prohibited the court from considering the juror affidavits Defendant submitted. Defendant argues that the doctrine of invited error has no application because Defendant did not intentionally mislead the trial court by stipulating to the jurors' dictionary usage during deliberation.

¶ 24 "The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal." *State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct.App.1991) (internal quotation marks omitted). On appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error. *See State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993). "[U]nder the doctrine of invited error, we have declined to engage in even plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [action taken]." *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 (second alteration in original) (internal quotation marks omitted).

¶ 25 In this case, while in deliberation, jurors submitted a note to the trial court requesting a dictionary. The trial court informed the parties of the request. After reviewing the request, both parties agreed that the trial court should provide a dictionary to the jurors. Defendant asserts that, although she stipulated to the jurors' use of the dictionary, the doctrine of invited error should not apply because her agreement was not based on any trial strategy for which she would benefit from giving the dictionary to the jurors. It is true that the invited error doctrine seeks to discourage parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal. *See Dunn*, 850 P.2d at 1220. However, the doctrine also serves to ensure that the trial court has the first opportunity to address the claim of error. *See id.* Thus, the application of the doctrine of invited error is not frustrated simply because Defendant had no strategic purpose in leading the court to commit the error. Rather, it is enough that Defendant informed the trial court that she had no objection to the jurors' use of the dictionary. *See Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171. As a result, the trial court did not err in applying the doctrine of invited error. Because we agree that the doctrine of invited error applies to Defendant's argument about the jurors dictionary usage we decline to consider Defendant's rule 606(b) argument.

## II. Motion for Mistrial

¶ 26 Defendant next argues that the trial court exceeded its permitted range

of discretion in denying her motion for mistrial based on prosecutorial misconduct. Defendant asserts that the prosecutor improperly used Defendant's invocation of her right to silence against her and made improper use of her invocation at closing argument. "Prosecutorial misconduct occurs when the prosecutor's comments call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict." *State v. Reed,* 2000 UT 68, ¶ 18, 8 P.3d 1025 (internal quotation marks omitted). We reverse only when "the prejudice is such that there is a reasonable likelihood the jury would have reached a more favorable result absent the comments." *Id.* (internal quotation marks omitted).

A. Invocation of Rights to Counsel and Silence

¶ 27 Defendant argues that the prosecutor improperly commented on Defendant's invocation of the right to counsel and implied that she colluded with counsel prior to speaking with the police. Defendant asserts that the testimony regarding her invocation of her right to counsel and subsequent silence was intended to show that she was guilty because she chose to speak to a lawyer before revealing that she had not turned on her lights or siren. Defendant's argument relies on the direct examination testimony of McCleve about his telephone conversation with Defendant several days after the accident.

■■■■■■ ¶ 28 During direct examination, the prosecutor asked McCleve whether Defendant made any statements to him about turning on her lights and siren. McCleve answered the question by responding that, "She wanted to talk to her lawyer first." What followed was a colloquy that provided

an explanation of the circumstances of McCleve's further contact with Defendant and concluded with McCleve stating that Defendant ultimately told him that the she had not turned on the lights or the siren.[5] Based on this line of questioning, it does not appear that the prosecutor's direct examination of McCleve was conducted to encourage an inference of guilt from Defendant's invocation of her right to counsel and subsequent silence. Moreover, the prosecutor did not use Defendant's temporary silence and invocation of her right to counsel to impeach her or to suggest an inference of guilt at any time during trial. "When an officer simply testifies about the circumstances surrounding an interview, a part of which is defendant's silence, without using defendant's silence to impeach her credibility, there is no [due process violation]." *State v. Maas,* 1999 UT App 325, ¶ 25, 991 P.2d 1108. McCleve's statement was not used to impeach Defendant's credibility; rather, it was made in the course of explaining his further contact with Defendant, and there was no resulting violation of Defendant's right to remain silent or right to counsel.

B. Prosecutor's Closing Argument

■■■■ ¶ 29 Defendant also claims that the prosecutor's closing argument was wholly unsupported by the evidence and therefore improper. During closing, the prosecutor discussed the sequence of events leading up to the accident and encouraged jurors to infer from the evidence that "it's entirely possible that [Defendant] should have known the emergency was over before she hit the car." Defendant asserts that the dispatch transcript does not support this argument; rather, it shows that Defendant reported the accident only one minute after Bailey announced that he had the suspect in custody.

---

5. During the prosecutor's direct examination of McCleve, the following colloquy occurred:

Q. Did [Defendant] make any statements to you about whether or not her emergency equipment, meaning her lights and sirens were on?
A. She wanted to talk to her lawyer first.
. . . .
Q. And did you have another telephone conversation then with [Defendant] and her attorney at the same time?

A. I did.
. . . .
Q. And so she was speaking with another attorney and you're all on the phone; is that right?
A. Yes.
Q. Were you given any information at that point then about whether or not the emergency lights or the siren were on?
A. She told me they were not on.

¶ 30 The transcript of the dispatch tape reveals that Bailey requested backup around 11:25 p.m. Thereafter, three units, including Defendant, responded notifying dispatch that they were each en route to assist Bailey. Bailey then requested responding units to "step it up a little bit," and Deputy Stacie Marshall arrived within the minute at 11:25 p.m. There is no further related radio activity until 11:27 p.m., when Bailey informed dispatch that he had a prisoner in custody and requested medical personnel to respond because of mace deployment. Within that same minute a second officer announced arrival. At 11:28 p.m., a third officer announced arrival, and Defendant reported that she had been in an automobile accident.

¶ 31 During closing, the prosecutor encouraged the jurors to conclude that the emergency ended at 11:25 p.m. when dispatch announced Marshall's arrival at Coconut Point. Defendant asserts that the dispatch transcript demonstrates that there is no evidentiary support for the prosecutor's position, as there was no announcement that the emergency had ended. In essence, Defendant offers an alternative viewpoint of the evidence, which tends to refute the State's interpretation of the evidence but does not clearly establish that the prosecutor's argument was wholly unsupported by the evidence. The dispatch transcript provides a reasonable basis for the State's position. Thus, we conclude that the prosecutor did not overstep her bounds by arguing the State's interpretation of the evidence.[6] *See State v. Bakalov,* 1999 UT 45, ¶ 59, 979 P.2d 799 ("While encouraging jurors to consider matters outside the evidence is prosecutorial misconduct, the prosecutor may fully discuss with the jury reasonable inferences and deductions drawn from the evidence." (citations omitted)).

## CONCLUSION

¶ 32 Regarding Defendant's insufficiency of the evidence argument, the evidence presented at trial established that Defendant drove approximately seventy miles per hour at night without activating emergency lights on a road that was not a thoroughfare or expressway, through an area consisting of homes. Defendant should have been aware that speeding under those circumstances would create an unjustifiable risk of death. Therefore, we simply cannot conclude that the evidence was insufficient to allow a reasonable juror to find Defendant guilty of criminal negligence.

¶ 33 Defendant also asserts that jurors committed misconduct by failing to honestly answer various voir dire questions and failing to follow the trial court's instructions to disregard the issue of punishment and extraneous evidence. First, Defendant provided no evidence to show that the foreman who was employed as a private security guard was either trained or employed as a peace officer. Likewise, Defendant did not provide evidence to show that jurors disobeyed the court's instructions to disregard the issue of punishment. Second, since Defendant agreed to give the dictionary to the jurors, the doctrine of invited error applies to prevent review of this issue on appeal. Because Defendant has not demonstrated juror misconduct we conclude that the trial court did not err in denying Defendant's motion for a new trial.

¶ 34 Finally, Defendant asserts that the prosecutor improperly used Defendant's invocation of her right to silence against her and made improper statements during closing arguments. Although testimony at trial revealed that Defendant invoked her right to silence, the prosecutor did not use Defendant's silence and invocation of her right to counsel to impeach her or initiate an inference of guilt. Thus, there was no violation of Defendant's right to remain silent or right to counsel. Furthermore, the prosecutor may fully discuss with the jury reasonable inferences and deductions to be drawn from the evidence. The dispatch transcript provides a reasonable basis for the prosecutor's closing argument. Therefore, we conclude that the trial court did not err in denying Defendant's motion for mistrial. Accordingly, we affirm

---

6. The prosecutor specifically argued that there were two unaccounted for minutes and invited the jurors to "weigh [the evidence] as you will but it's the State's position that it's entirely possible that [Defendant] should have known the emergency was over before she hit that car."

the trial court's ruling denying Defendant's motion for mistrial.

¶ 35 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.