2011 UT App 75

STATE of Utah, Plaintiff and Appellee,

v.

John Callahan HAUPTMAN, Defendant and Appellant.

No. 20080811–CA.

Court of Appeals of Utah.

March 17, 2011.

Scott L. Wiggins, Salt Lake City, for Appellant.

Mark L. Shurtleff and Christopher D. Ballard, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and CHRISTIANSEN.

## MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶ 1 John Callahan Hauptman appeals from his conviction of one count of sexual abuse of a child, *see* Utah Code Ann. § 76–5–404.1 (2008). We affirm.

¶ 2 Hauptman first argues that the trial court erred in denying his motion for a new trial. Specifically, he argues that the trial court misapplied the test set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), to determine whether juror misconduct warranted a new trial.[1] "The *McDonough* test mandates a new trial if the moving party demonstrates that (1) 'a juror failed to answer honestly a material question on voir dire,' and (2) 'a correct response would have provided a valid basis for a challenge for cause.' " *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992) (quoting *McDonough*, 464 U.S. at 556, 104 S.Ct. 845). "The trial court's conclusion that the *McDonough* test was not satisfied is a legal conclusion that we review for correctness...." *State v. Evans*, 2001 UT 22, ¶ 26, 20 P.3d 888.

¶ 3 One of the questions asked of the prospective jurors during voir dire was the following:

---

1. Hauptman also makes an argument regarding the timeliness of his motion for a new trial, which argument addresses the State's assertion below that the motion was untimely. However, because the State now concedes that the motion was timely and because the trial court denied the motion—and we affirm such denial—by reaching the merits of Hauptman's argument therein, we need not address the timeliness issue.

[I]f the evidence comes out in this case that the defendant has in the past viewed pornography, would that fact affect your ability to be fair and impartial in this case? If those were the facts, if that came out in this case from the evidence, would that affect your ability to be fair and impartial and base your decision solely on the evidence in this case?

None of the prospective jurors indicated in the affirmative. However, several weeks after trial and the resulting guilty verdict, one of the jurors wrote a letter to the court in which she explained how she had arrived at her guilty vote:

My guilty vote was not based on the fact that I thought Mr. Hauptman was guilty of spanking for the intent of sexual gratification. It was based on the idea that if it happened once, then he should have avoided that situation all together and not spanked again. Also I leaned toward guilty, at the time, because of other immoral forms of sexual gratification that he participated in, like ... the pornography. As much as I believed during jury selection that pornography would not play a part in my vote, I regret to say that it did to some extent. I voted guilty for the wrong reasons and my conscience will not let me get away with it.

Hauptman argues that this letter shows that the *McDonough* test is satisfied here and a new trial is warranted.[2]

¶ 4 The first prong of the *McDonough* test examines whether a juror gave a dishonest answer on voir dire. *See Thomas*, 830 P.2d at 245. "Some courts have interpreted *McDonough* to require a finding of juror misconduct only if a prospective juror is aware that her answers are false." *Id.* at 246. However, the Utah Supreme Court has determined that "the better-reasoned approach mandates that a juror's 'honesty' or 'dishon-

esty' be determined from an objective perspective." *Id.* Hauptman uses this interpretation to argue that the juror in this case gave an answer on voir dire that was incorrect, that is, she stated that she could remain impartial when faced with evidence regarding the defendant's pornography problem but that statement ultimately turned out to be incorrect.

¶ 5 We agree with the trial court that the first prong of the *McDonough* test is not met in this case and that the cases Hauptman cites are inapposite to the case before us. Hauptman relies only on cases in which jurors untruthfully answered a question regarding their prior experiences or current situation—answers which could be determined to be true or false at the time that they were given. *See, e.g., id.* at 245 (reviewing voir dire questions asking, " 'Have any of you or a close relative been a victim of a crime of violence[?]' " and, " 'Have any of you or any close relative been accused of a similar type of offense as the charge here[?]' "). The question here, on the other hand, asked the prospective jurors to predict whether they could remain impartial under a certain hypothetical situation. In essence, the question was whether each prospective juror *thought* that evidence of pornography would affect his or her ability to be impartial.

¶ 6 We have previously held that the first prong of the *McDonough* test is not met when jury members' actions fail to live up to predictions they made during voir dire, that is, an incorrect prediction does not amount to a dishonest answer. In a case where the jurors had answered on voir dire that they would be able to disregard the issue of punishment and extraneous evidence, but where a postconviction affidavit revealed that punishment had been discussed during deliberations, we determined that the first prong of the *McDonough* test was not met. *See State v. Redding*, 2007 UT App 350, ¶ 22, 172 P.3d

---

**2.** There is some indication from the juror's letter that she misconstrued the voir dire question and understood that she was not to let evidence of Hauptman's pornography problem influence her decision in *any* way. Although it would have been appropriate for the juror to consider the pornography evidence in her evaluation of some aspects of the case, such as determining intent, the juror seems to indicate that she did not use

the pornography evidence for such purposes. Indeed, she states that she did not believe that Hauptman had the intent of sexual gratification when he spanked his daughter, yet she still voted guilty based, at least in part, on his other immoral activities. In any event, because of our conclusion regarding the *McDonough* test, we need not make a determination on this issue.

319. Although the affidavit stated that punishment and some extraneous evidence was discussed, "[the affidavit did] not demonstrate that the jury panel untruthfully answered the trial court's questions pertaining to the jurors' ability to obey the court's instructions to disregard the issue of punishment and extraneous evidence." *Id.* We concluded, "There is no evidence that the jury panel, at the time [of voir dire], intended to disregard those instructions. Without such evidence we cannot conclude that jurors dishonestly answered the trial court's questions on their ability to disregard the issue of punishment and any extraneous evidence." *Id.*

¶ 7 Applying that analysis to the case before us, as long as the juror answered the question on voir dire with her honest opinion of whether she could remain impartial in the face of pornography evidence, we cannot say that the juror dishonestly answered the question on voir dire. The juror specifically stated in her letter that she "believed during jury selection that pornography would not play a part in [her] vote," and thus, the trial court did not err in denying Hauptman's motion for a new trial.

■ ¶ 8 Hauptman next argues that his trial counsel rendered ineffective assistance by failing to request a jury instruction on the lesser-included offense of sexual battery. The two-part test for determining whether counsel was ineffective is as follows: " 'First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.' " *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle,* 1999 UT 96, ¶ 34, 989 P.2d 52 (alteration in original) (internal quotation marks omitted). We therefore consider whether a request by defense counsel for an instruction on sexual battery would have been futile under the circumstances of this case.

■ ¶ 9 To decide whether the trial court would have been obligated to give the sexual battery instruction, we employ the two-part test set forth in *State v. Baker,* 671 P.2d 152, 158–59 (Utah 1983). We first analyze whether one offense is an "included offense" of another offense. *See id.* We then determine "if the evidence offered provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id.* at 159 (internal quotation marks omitted); *see also* Utah Code Ann. § 76–1–402(4) (Supp.2010).

¶ 10 Even assuming that sexual battery is an included offense of sexual abuse of a child,[3] we do not agree that the trial court would have been required to give an included offense instruction upon request because the second prong of the *Baker* test is not met here. There is no interpretation of the evidence that would lead to an acquittal on the charge of sexual abuse of a child and a conviction on sexual battery, that is, to a determination that Hauptman did *not* spank his daughter "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person," *see* Utah Code Ann. § 76–5–404.1(2) (2008), but *did* do the spanking "under circumstances [he knew or should have known would] likely cause affront or alarm to the person touched," *see id.* § 76–9–702(3) (Supp. 2010). Hauptman argues that the jury could have determined that he spanked his daughter only for disciplinary reasons but that because he momentarily thought about pornography when the spanking occurred, he should have known this would cause affront or alarm to his daughter. However, Hauptman points us to no evidence that his daughter was at all aware that he momentarily thought about pornography

---

**3.** We do not see that it has been previously established that the elements of these two offenses overlap. Hauptman's assertion to that effect relies on a case that did not analyze the matter but simply assumed overlap for purposes of that case. *See State v. Knight,* 2003 UT App 354, ¶ 10, 79 P.3d 969 ("Here, because the State concedes that the elements of sexual abuse of a child and sexual battery overlap, we assume that the first prong of the *Baker* analysis is satisfied.").

during the spanking, so we do not agree that the jury could have found that Hauptman should have known that such a disciplinary spanking would likely cause his daughter affront or alarm. Thus, the trial court would not have been obliged to give the jury instruction on sexual battery, and Hauptman's counsel was therefore not ineffective for failing to request such an instruction, *see Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52.[4]

¶ 11 Hauptman finally argues that the trial court erred in denying his motions to dismiss and suppress based on the State's destruction of evidence. But "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Even assuming that, as Hauptman argues, the police did actually record their interview of Hauptman, the trial court determined that the recording "was not lost ... or destroyed for any improper purpose, that it was not done intentionally." This finding is not against the clear weight of the evidence. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 75, 99 P.3d 801 ("When reviewing a district court's findings of fact on appeal, we do not undertake an independent assessment of the evidence presented during the course of trial and reach our own separate findings with respect to that evidence. Rather, we endeavor only to evaluate whether the court's findings are so lacking in support that they are against the clear weight of the evidence."). Indeed, Hauptman raises no evidence that points to bad faith action on the part of the police but only evidence that the tape recording "was either lost or recorded over" by the police. Thus, without a showing of bad faith on the part of police, the trial court did not err in denying Hauptman's motions to dismiss and suppress.

¶ 12 Affirmed.

---

4. We observe that even had we determined that Hauptman would have been entitled to a jury instruction regarding sexual battery, the failure to request such an instruction may have been part of defense counsel's trial strategy. *See State v. Howell*, 649 P.2d 91, 94 (Utah 1982) ("[A]n accused may choose not to request instructions on lesser included offenses as a matter of trial strategy, usually in the belief that he can defeat the greater charge, but might not be able to defeat a lesser included offense.").

¶ 13 WE CONCUR: WILLIAM A. THORNE JR. and MICHELE M. CHRISTIANSEN, Judges.